[Sac. No. 383.    Department One—December 22, 1897.]

In the Matter of the Estate of JOSEPH BOODY, Deceased.

ESTATES OF DECEASED PERSONS—DISTRIBUTION—SEPARATE PROPERTY OF HUS-
BAND—PRESUMPTION FROM PURCHASE AFTER MARRIAGE—REBUTTING PROOF.
Property acquired by the husband before marriage is properly dis-
tributed as his separate estate; and the presumption that property
purchased after marriage is community property is rebutted and
overcome by proof that the property acquired after marriage was
acquired by the ordinary use of his separate property, and that
lands which appear to have been the nucleus of subsequent holdings
was settled upon, possessed, and claimed by him long before his
marriage, although not consummated by patent from the sources of
paramount title until subsequent to the marriage.

APPEAL from an order of the Superior Court of San Joaquin County making partial distribution of the estate of a deceased person and from an order denying a new trial. Joseph H. Budd, Judge.

Minor & Ashley, Nicol & Orr, and Rodgers & Paterson, for Appellants.

Woods & Levinsky, and Baldwin & Thompson, for Respondents.

SEARLS, C.—This is an appeal from an order of partial distribution of the estate of Joseph B. Boody, and from an order refusing a new trial therein. The order distributes certain par-

cels of real estate belonging to said estate. The sole question in issue is whether the lands so distributed were community property or the separate property of Joseph B. Boody, deceased.

Joseph B. Boody died intestate, in the county of San Joaquin, November 7, 1893, without issue, leaving him surviving as his heirs at law Elizabeth Boody, his widow, Emily Foss, a sister, and the children of a deceased brother. Elizabeth Boody, the widow, died intestate November 10, 1893, without issue, leaving as her next of kin and heirs at law, a sister, one child of a deceased sister, and the children of certain deceased brothers.

The heirs at law of Elizabeth Boody claimed on the distribution that the property in controversy was the community property of Joseph B. and Elizabeth Boody, his wife, and hence that they were entitled of right to have distributed to them three-fourths thereof. The court below denied this claim. It found that all the real estate involved was the separate property of Joseph B. Boody, and accordingly distributed to the heirs of Elizabeth but one-half thereof, and the other half to the heirs of Joseph B. Boody.

The heirs of Elizabeth appeal from the decree and from an order denying their motion for a new trial, and their contention is, that the finding as to the separate character of the property is not warranted by the evidence. This cause was here once before upon an appeal involving precisely the same question, whereupon the decree of the court below was reversed.

Upon the going down of the *remittitur*, another trial was had, in which the precise evidence taken on the former trial was introduced and certain other witnesses, four in number, were called and testified on behalf of respondents. The case on the former appeal is reported in 113 Cal. 682.

In reference to that case, we may say that the comments of this court upon the evidence are sufficiently full and specific to lead to an understanding of its scope and effect, and reference is had thereto for an exposition of the facts therein stated. We need, therefore, only comment upon the additional testimony adduced at the last trial.

It is proper to state that Joseph Boody and Elizabeth Boody (*nee* Mulvey) intermarried December 31, 1857. The additional

evidence at the last trial showed without contradiction that Joseph B. Boody was born in New Hampshire in 1821, was a machinist by trade, and, prior to his coming to California in 1851, he had loaned money at a good percentage, and when he came to California he had and brought with him fifteen hundred dollars, and left real estate in New Hampshire which was sold in 1879 for one thousand dollars and the proceeds remitted to him.

Arrived in this state, Mr. Boody engaged for a brief period in mining, by which he made five hundred dollars, and then went north for a short time and mined, but with what result is not known. He returned and engaged in teaming at Mokelumne Hill, and in hauling water for the supply of citizens, which he sold at one bit a bucket—eight buckets for one dollar. He had one four-horse team worth two thousand five hundred dollars and one six-mule team of the value of three thousand five hundred dollars.

Mr. S. L. Magee, a merchant at Mokelumne Hill who knew Boody well, described him as an industrious, thrifty, prudent man without bad habits. The witness judged that when Boody left and settled in San Joaquin county (1853) he had from twelve thousand to fifteen thousand dollars. This judgment was formed from the witness' knowledge of the man, the business he was doing, and the manner of doing it. He had money and was reputed to be a money lender. The witness thought Boody used to put money in his, witness', safe, and that he borrowed money from him, but could not say positively.

In 1853, Boody went to San Joaquin county, settled upon a tract of land known as "Locust Shade," formed a partnership with one Heath, and engaged in farming. They were good farmers; prices were good; they raised large crops, and were reputed to have money to loan.

One witness (J. H. Tone) never borrowed money from them, but sold them a note for three hundred dollars.

Another witness (C. I. Leach), who described them as reputed money lenders, borrowed one thousand dollars from Boody, but this was in 1861, and consequently after Boody married.

They were farming in several places prior to 1857; farmed from one to five hundred acres; averaged say twenty-five bushels

to the acre, and sold on an average at about two cents per pound. They are described as the largest farmers in that region at that time, and as being successful farmers.

All the property distributed was purchased during marriage. The purchase price of all the land was nine thousand three hundred and sixty dollars, of which Boody owned an undivided one-half, and his copartner, Heath, the other half. The court below found that Boody was at the time of his marriage worth seven thousand dollars, besides real estate in New Hampshire worth one thousand dollars, etc., and that he paid four thousand six hundred and eighty dollars for his half interest in the land, all of which was his separate property owned by him before marriage, and by the ordinary use of such separate property after his marriage. To the new evidence introduced at the second trial there was nothing new offered in contradiction. Indeed, there is no direct evidence that Boody ever made any money after his marriage.

We think the case is presented in a very different aspect from that in which it appeared upon the former trial, and that the evidence raises a presumption sufficient to dispel the general presumption of community property because purchased subsequent to marriage. The lands which seem to have been the nucleus of the subsequent holdings were settled upon, possessed, and claimed by Boody and Heath long before the marriage of the former. The Locust Shade place was settled upon by Boody February 20, 1853, and improved by a house, etc., and when it was surveyed in 1866 he filed his pre-emption claim thereon and in due time procured a patent from the government.

Heath and Boody had also purchased what was known as the Pico title to the swamp land tract, and when afterward the Pico title failed, Heath again purchased from the state the same land under the swamp land act. They each conveyed to the other one-half of their holdings. Their several titles were thus initiated before the marriage of Boody, although not consummated by conveyance from the sources of the paramount title until subsequent to such marriage. *Lake v. Lake*, 52 Cal. 428, *Estate of Higgins*, 65 Cal. 407, *Harris v. Harris*, 71 Cal. 314, *In re Lamb*, 95 Cal. 397, and *In re Bauer*, 79 Cal. 304, are authorities upholding the conclusions of fact and law reached by the court below.

We have examined the exceptions reserved by the appellant at the trial. Counsel have not urged them here, and they do not call for comment. Upon a review of the whole record, we recommend that the decree and order appealed from be affirmed.

Belcher, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the decree and order appealed from are affirmed.

Harrison, J., Garoutte, J., McFarland, J.

Hearing in Bank denied.