BUCHSER v. MORSS et al.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

No. 2,151.

HUSBAND AND WIFE (§ 252*)—"COMMUNITY PROPERTY"—LAND ACQUIRED UN-
DER HOMESTEAD LAWS.

When a patent has been issued by the United States to a homestead entryman, the land becomes subject to the laws of descent and distribution of the state, and under the law of Washington as settled by decision a government homestead acquired by a husband is community property

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 895; Dec. Dig. § 252.*

For other definitions, see Words and Phrases, vol. 2, pp. 1343, 1344; vol. 8, p. 7608.]

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit in equity by John R. Buchser against John W. Morss, Alfred G. Morss, Annie Buchser, Hans R. Buchser Roland H. Buchser, and Hillman A. Buchser. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 196 Fed. 577.

David Herman, of Spokane, Wash., for appellant.

John Salisbury, for appellee Annie Buchser.

W. W. Zent, for other appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The appellant, who was the complainant in the court below in a suit to quiet title, alleged in his bill that in 1887 he married a widow who had three children; that in June, 1897, he and his family settled upon 160 acres of public land under the homestead law, and that on December 17, 1903, he received the patent therefor; that with money derived from the sale of timber standing on the homestead he purchased another 160 acres of land; that in September, 1911, his wife died, leaving surviving her the aforesaid three children, who were the parties defendant to the bill; that the defendants claimed an undivided one-half interest in all of the lands described in the complaint on the ground that the same was community property of the appellant and of their mother; that, in fact, all of said lands were the sole and separate property of the appellant. A demurrer to the bill was sustained for want of equity, and the bill was dismissed.

The appellant's contention is that a homestead acquired by an entryman under the homestead laws of the United States is the separate property of the entryman, and that lands purchased with the proceeds of a sale of timber cut from said homestead is likewise his separate property. The Supreme Court of the state of Washington has uniformly held that land in that state acquired under the homestead laws

of the United States is the community property of the entryman and his wife. Kromer v. Friday, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671; Ahern v. Ahern, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. Rep. 912; Cox v. Tompkinson, 39 Wash. 70, 80 Pac. 1005; Hall v. Hall, 41 Wash. 186, 83 Pac. 108, 111 Am. St. Rep. 1016; Cunningham v. Krutz, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967; Krieg v. Lewis, 56 Wash. 196, 105 Pac. 483, 26 L. R. A. (N. S.) 1117. It is of no assistance to us to refer to Missouri, Louisiana, and California cases, such as Wilkinson v. American Iron Mountain Co., 20 Mo. 122, Rouquier's Heirs v. Rouquier's Executors, 5 Mart. N. S. (La.) 98, 16 Am. Dec. 186, and Noe v. Card, 14 Cal. 577, holding that a royal grant or gift to either of the two spouses did not enter into the community of acquisitions and gains which under the Spanish law resulted from the mere fact of marriage, for if, indeed, land acquired under the homestead or pre-emption laws of the United States is to be classed among gifts from the government, the Supreme Court of Washington has rejected the doctrine that such property may not be made community property.

But it is urged that the question is not to be determined by the law of the state, but by the law of the United States, and that the state law is powerless to control the plain provisions of the homestead laws of the United States which give the title to the homestead entryman as his separate property, and in support of that contention the appellant cites Hall v. Russell, 101 U. S. 503, 25 L. Ed. 829, Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152, and McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237. Those cases, however, do not sustain the contention. They are all cases in which the court was called upon to construe the land laws, and the rights of settlers thereunder, prior to the time when the right to the title had matured under the settlement. They have no relation to the question which is presented in this case, which is the question of the authority of a state Legislature to make community property of land which has passed from the United States to the homestead entryman. In Hall v. Russell all that was decided was that under Donation Act Sept. 27, 1850, c. 76, 9 Stat. 496, the title to the grant did not vest in the settler before the conditions had been fully performed, and that an unmarried man who had settled upon a half section of public land in Oregon, and after residing thereon less than a year died, had no devisable interest in the land, and that on his death his heirs, not by inheritance, but by the terms of the act, became qualified grantees, with the right to continue the residence and settlement, and to acquire title. In Bernier v. Bernier it was held that, where a homestead entryman dies a widower and without having acquired a patent, the right to complete the proofs and acquire the patent passes, under Revised Statutes, § 2291 (U. S. Comp. St. 1901, p. 1390), to all his children equally. And in McCune v. Essig it was held that, upon the death of the homestead entryman before final proof, the right to complete the proof and obtain the patent was given by the homestead law to the surviving widow, and not to the widow and children, under the community property laws of the state of Washington. In

that case the question before the court was not one of the descent of property, but one of the construction and application of the homestead laws of the United States, which laws expressly gave to the widow the right to complete the settlement in compliance therewith, and to receive the title. In other words, the court held that the widow became, under the facts and the law applicable thereto, the grantee of the land from the United States, and that all the right of her husband was extinguished by his death.

The principle which governs the present case is found in Wilcox v. M'Connel, 13 Pet. 498–516 (10 L. Ed. 264):

"We hold the true principle to be this: That whenever the question in any court, state or federal, is whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but that, whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to the state legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

So in Bernier v. Bernier, 147 U. S. 246, 13 Sup. Ct. 245, 37 L. Ed. 152, the court said:

"The object of the sections in question was, as well observed by counsel, to provide the method of completing the homestead claim, and obtaining a patent therefor, and not to establish a line of descent or rules of distribution of the deceased entryman's estate."

But counsel for appellant claim that the course of decision of the Supreme Court of Washington upon this subject has not been uniform, but has been inconsistent, and that that court has held mineral claims, coal lands, and land acquired under the Timber and Stone Act to be separate property, citing Gardner v. Port Blakely Mill Co., 8 Wash. 1, 35 Pac. 402; Phoenix Min. & Mill Co. v. Scott, 20 Wash. 48, 54 Pac. 777; James v. James, 51 Wash. 60, 97 Pac. 1113, 98 Pac. 1115; and Guye v. Guye, 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186. But those decisions do not affect the binding force of the other decisions of that court by which it has been uniformly held that lands acquired under the homestead law are community property. The distinction in these classes of cases is based expressly upon the ground that under the homestead and pre-emption laws but one entry is allowed to a family, and it must be made by the head of the family, and the family is required to live on the land and make a certain amount of improvements thereon before final proof can be made that those laws were framed ostensibly for the benefit of the family, that the intent of Congress in passing those acts was to induce men with families to settle upon and make their homes upon the public lands, whereas, in the case of a purchase of land under the Timber and Stone Acts, no settlement or residence upon the land is required, and the entryman is required to take an oath that he has not applied to purchase the land for speculation, but for his own use and benefit, that he has not made any agreement, directly or indirectly, in any way or manner with any person, by which the title which he shall acquire will inure to the benefit of any person other than himself, and that each of the

spouses may make such an entry. Whether there is inconsistency in so distinguishing the rights acquired under the different classes of the land laws is a question with which we have nothing to do. We are controlled by the settled law of the state of Washington which, as we have seen, does not contravene any provision of the homestead law, and very justly and equitably makes the land acquired as a homestead the community property of the man and wife, who have resided upon it, and cultivated it, and done the necessary acts to acquire the title thereto.

The decree is affirmed.