[Civ. No. 3627. First Appellate District, Division One.—June 3, 1921.]

LA REY C. MINIUM, Administratrix, etc., Appellant, v. CHARLES E. MINIUM, Respondent.

[1] HUSBAND AND WIFE—DIVORCE—SETTLEMENT OF PROPERTY RIGHTS. Where the plaintiff in an action for divorce does not set forth that there is any property whatever belonging to the community, nor ask for any judgment or determination concerning it, a decree in such a case, being for divorce simply, does not conclude either of the parties in respect to their claims otherwise existing to the community property.

[2] ID.—HOMESTEAD TO HUSBAND—SEPARATE PROPERTY.—The grant of a homestead by the United States government to the husband is a gift or donation, and, therefore, such homestead is the separate property of the husband.

[3] ID.—ADVANCES BY WIFE—EFFECT ON PROPERTY OF HUSBAND.—The fact that the wife has advanced money to the husband for the purpose of assisting him to procure a homestead from the United States government would not affect the title to or character of the property, but such money constitutes a loan to the husband, giving rise to a cause of action if not repaid.

APPEAL from a judgment of the Superior Court of Riverside County. Hugh H. Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank C. Collier, Collier & Labarere, John Schlegel, Louis F. Labarere and W. H. Sprague for Appellant.

F. E. Dunlap and Cedric C. Johnson for Respondent.

KERRIGAN, J.—This is an appeal from an order sustaining a general demurrer to the plaintiff's first amended complaint without leave to amend. Since the appeal was taken Mary E. Loeber, who commenced the action, has died, and the administratrix of her estate has been substituted as plaintiff and appellant.

2. Partition of homestead in community property, notes, 56 L. R. A. 79; 4 L. R. A. (N. S.) 797.

The purpose of the action is to obtain a decree declaring a homestead acquired by the defendant from the government of the United States to be community property of the intestate and defendant, who were husband and wife at the time of the initiation of the proceeding for the grant of the homestead. From the complaint it appears that the deceased and defendant were married in the year 1888. In 1914 they separated and did not thereafter live together. About two months after said separation, to wit, in December, 1914, the defendant made a homestead entry upon the land in question. Subsequently an action for divorce was commenced by said wife, and in the month of October, 1916, she was granted a final decree of divorce from the defendant. About two years thereafter, the defendant having made his final proof upon the homestead application, and complied with the laws of the United States in that regard, a patent to the land was issued to him. It is disclosed by the amended complaint that in the meantime his divorced wife had remarried, and she commenced this action shortly after the defendant received said patent. The complaint also alleges that between December, 1910, and October, 1914, when the parties separated, the deceased had advanced to the defendant or on his account six hundred dollars, four hundred dollars of which was for living expenses, and two hundred dollars for the purpose of securing the relinquishment by one Melvina A. Lot of a desert land entry on the property the subject of this controversy. The money so alleged to have been furnished by the deceased to the defendant was advanced prior to the entry and settlement on the land by the defendant. The complaint further alleges that no adjustment of the property rights of the parties was sought or made by agreement between them in the divorce action, or otherwise.

No objection is urged by the defendant that this action may not be maintained on the ground that the property rights of the parties should have been settled in the divorce proceeding; nor could such objection very well be made in view of the position taken by the authorities in this state on the subject. [1] Where the plaintiff in an action for divorce does not set forth that there is any property whatever belonging to the community, nor ask for any judgment or determination concerning it, a decree in such a case being

for divorce simply does not conclude either of the parties in respect to their claims otherwise existing to the community property. (*Coats* v. *Coats,* 160 Cal. 671, [36 L. R. A. (N. S.) 844, 118 Pac. 441].)

. [2] Coming now to the sole controverted question in the case, namely, Was the homestead acquired by the defendant under the circumstances related his separate property or community property? It is contended by plaintiff that the right to the patent subsequently issued having been acquired during the existence of the marriage, although not perfected until after its dissolution, the perfected title when issued related back to its inception, and the property must be regarded as having been acquired during coverture, and therefore community property.

This position is not maintainable in this state. The grant of said homestead by the United States to the defendant was a gift or donation, and therefore it became his separate property. All property acquired by either spouse before marriage, and that acquired after marriage by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is separate property. All other property acquired after marriage by either husband or wife or both is community property. (Civ. Code, secs. 162–164.) In the federal cases it seems to be assumed that the homestead is a gift from the government. In the case of *Smith* v. *Townsend,* 148 U. S. 490, [37 L. Ed. 533, 13 Sup. Ct. Rep. 634, see, also, Rose's U. S. Notes], Mr. Justice Brewer, at page 497, says: "The general homestead law gives right of homestead to persons possessing certain qualifications," etc. And in the same case the court holds that no one shall enjoy the bounty of Congress unless he can qualify as an entryman. In the case of *Oscar O. Reeg,* 40 L. D. 205, the following language is used: "The object of the homestead laws is the donation of public lands to persons seeking to establish and maintain agricultural homes thereon," etc.

In the case of *Anderson* v. *Carkins,* 135 U. S. 483, [34 L. Ed. 272, 10 Sup. Ct. Rep. 905, see, also, Rose's U. S. Notes], the same learned justice, in passing upon the alienability of a homestead, says (page 487): "The theory of the homestead law is that the homestead shall be for the exclusive benefit of the homesteader. Section 2290 of the Revised Statutes provides that a person applying for the

entry of a homestead shall make affidavit that, among other things, 'such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person.' " And on page 488 of the same case, it is said, in stating the argument *pro* and *con* in a similar case: "On the other hand, it is contended that the homestead is a gift from the government to the homesteader conditioned upon his occupation for five years and upon his making no disposition or alienation during such term." In this last case it is not held, as stated in *Adams* v. *Church,* 193 U. S. 511, [48 L. E'd. 769, 24 Sup. Ct. Rep. 512], that the homestead is a gift from the government to the homesteader upon certain conditions subsequent. However, the question is settled in this state by the case of *Noe* v. *Card,* 14 Cal. 577. In that case Noe, under the Mexican government, was granted a fifty-vara lot in San Francisco subject to the conditions that within one year the lot should be fenced and have a house built thereon, and the payment of certain municipal fees established by law. The entryman at the time of filing his application for the grant was married. The wife died after the grant was completed, and the question arose as to whether the property so acquired was community property, which question resolved itself into the inquiry whether the grant in question was a donation or a sale. It was held to be the former, and consequently to be the separate property of the donee; for, although certain conditions were attached to the grant they were held not to be onerous since they consisted in the expenditure of money and labor upon the land itself and for the benefit of the grantee, and not for the benefit of the grantor or persons other than the grantee, only conditions of that character being classed as onerous in a grant. In that case Mr. Justice Field, speaking for the court, said: "In the present case the donee solicited the premises for the purpose of erecting a house. This purpose is expressed in his petition, and he and his wife and heirs are estopped from denying that he desired it for that purpose. It must be taken, then, as true that such was the case. The premises were not, therefore, the less gratuitously given or the less valuable to him because granted subject to the conditions of their appropriation to that end. The house and

fence were to be built for the benefit of the donee and not for the government. There was, therefore, no consideration in the performance of these acts running to the government which can be regarded in the nature of a price, which is essential in all contracts of sale. The condition requiring the construction of a house within a year was very generally annexed to grants made under the Mexican government in California. . . . The performance of the condition was exacted in furtherance of the general policy of the republic to induce settlements, and not as a price to the government upon any notion of a sale.'' The court then addressed itself to a consideration of certain Texas cases, saying that they undoubtedly support the contrary position, that property thus acquired is community property, and, speaking of the case of *Yates* v. *Houston,* 3 Tex. 433, the court says: ''The court holds the property to be community property on two grounds, (1) that the commissioner's fees, office fees, stamps, surveying fees, etc., were required by law before the title issued, and, second, that the condition of cultivation annexed to the grant was onerous. . . . The error, as we conceive, of this decision consists in regarding the fees paid to the officers, and the services rendered in settling upon the land, as constituting a valuable consideration in the nature of a price to the government. The fees incurred in making the survey and in issuing the title papers were altogether incidental to the grant and formed no part of its consideration, and the services rendered in the settlement were directly for the benefit of the grantee, and only collaterally and remotely for the benefit of the government.''

The same principle is laid down in *Fuller* v. *Ferguson,* 26 Cal. 547, *Wilson* v. *Castro,* 31 Cal. 421, and *Hood* v. *Hamilton,* 33 Cal. 698. See, also, *Estate of Lamb,* 95 Cal. 397, [30 Pac. 568], *Estate of Boody,* 119 Cal. 402, [51 Pac. 634], *Harris* v. *Harris,* 71 Cal. 314, [12 Pac. 274], and *Morgan* v. *Lones,* 80 Cal. 317, [22 Pac. 253]; *Wadkins* v. *Producers' Oil Co.,* 130 La. 308, [57 South. 937]; 227 U. S. 368, [57 L. Ed. 551, 33 Sup. Ct. Rep. 380, see, also, Rose's U. S. Notes]; 21 Cyc. 1627, 1658.

In Washington a doctrine contrary to that followed in *Noe* v. *Card* is established, the cases in that state holding that when the entryman is a married man at the time of filing his application for a homestead, and he and his wife

reside upon the property and do the work necessary to acquire title thereto, such homestead when patent is issued is community property. In such a case the land, for the purpose of fixing the relative rights of the entryman and his wife, is regarded as having been acquired by purchase, the consideration being the settlement upon and improvement of the land, in which the wife participates with the husband. (*Kromer* v. *Friday,* 10 Wash. 621, [32 L. R. A. 671, 39 Pac. 229]; *Ahern* v. *Ahern,* 31 Wash. 334, [96 Am. St. Rep. 912, 71 Pac. 1023]; *Buchser* v. *Morss,* 202 Fed. 854, [121 C. C. A. 212].) Under one of the latest cases in that state, however it is clear that the homestead in the instant case would be held to be the separate property of the defendant, for it is there held that when the marital relation does not exist at the time of the original settlement and entry, and continue until final proof is made, the land should be held to be the separate property of the spouse who finally acquires the patent to the land. (*Teynor* v. *Heible,* 74 Wash. 222, [46 L. R. A. (N. S.) 1033, 133 Pac. 1].) We have seen that in the case at bar the defendant and his wife were already separated when the former initiated the entry, and his wife never lived on the land nor assisted in its cultivation and improvement, and the marriage was dissolved by final decree of divorce more than two years before the making of final proof and receipt of patent.

[3] Granting, as we must, that any portion or all of the six hundred dollars, alleged to have been advanced by the deceased to the defendant, was for the purpose of assisting him in his undertaking with respect to the land in question, this would not affect the title to or character of the property. This money constituted a loan to the defendant, giving rise to a right of action if not repaid. (*Carlson* v. *Carlson,* 10 Cal. App. 300, [101 Pac. 923].) This point was also in effect decided in the case of *Noe* v. *Card, supra,* where it was said that whatever was expended by the community existing between Noe and his wife constituted a claim in its favor against the estate of Noe, but did not affect the title to the property, for that was fixed by the terms of the grant, which was to the husband alone. (See, also, *Fuller* v. *Ferguson, supra.*) It follows that if labor and expenditures incurred by the community for the improvement of the separate property of one of the parties

cannot change its character, mere money advances by the wife to the husband, although made to enable him to acquire title to public lands, will not do so, but may be recovered as a claim against him.

The order is affirmed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 1, 1921.

Angellotti, C. J., Shaw, J., Lawlor, J., and Lennon, J., concurred.

Wilbur, J., was absent.