[Civ. No. 4834.   Second Appellate District, Division One.—April 13, 1927.]

JOHN A. MEYER, Respondent, v. ESTELLA S. MEYER, Appellant.

[1] DIVORCE — CONFLICTING EVIDENCE — FINDINGS. — In an action for divorce upon the ground of desertion, the trial court is warranted in believing any substantial evidence introduced at the hearing, and which will sustain its findings, no matter how strongly such evidence may be controverted.

[2] ID.—DESERTION — SEPARATION BY MUTUAL CONSENT — EVIDENCE.— In this action, the finding of the trial court that "defendant wilfully and without just cause deserted and abandoned the plaintiff against his will and without his consent" was supported by sufficient evidence; and the fact that plaintiff helped defendant to remove her belongings did not establish that the separation of the parties was by their mutual consent, where there was evidence showing that plaintiff's acts in that regard were performed over his protest and by reason of fear for his life if he did not do as defendant ordered.

[3] ID.—DESERTION—SUBSEQUENT OFFER TO RETURN.—After the cause of action for divorce on the ground of desertion had accrued

1. Degree of proof required to establish cause for divorce, note, Ann. Cas. 1913B, 1216.   See 9 R. C. L. 432.

3. Loss of purported right to divorce by offer to return after desertion for statutory period, notes, 84 Am. St. Rep. 138; 138 Am. St. Rep. 154.   See, also, 9 Cal. Jur. 674; 9 R. C. L. 373.

in favor of plaintiff, he was not compelled to accept defendant's request to take her back and resume living together as husband and wife.

[4] ID.—EVIDENCE—CORROBORATION.—In this action for divorce on the ground of desertion, the findings made by the trial judge in favor of plaintiff did not depend alone on the evidence given by the parties to the action, but were founded upon facts and circumstances adduced from sources independent of either of such parties, and which were sufficient to satisfy the requirements of section 130 of the Civil Code.

[5] ID. — GOVERNMENT HOMESTEAD — SEPARATE PROPERTY. — In such action, the evidence having shown that prior to the marriage of the parties plaintiff filed a desert claim covering the lands upon which he was living, and that after the marriage he changed his application on the same property from a desert claim to a homestead claim, which at the time of trial had not been perfected, the trial court properly found that said homestead was the separate property of plaintiff.

[6] ID. — COMMUNITY PROPERTY — EVIDENCE — FINDINGS — APPEAL. — In such action, while defendant testified that it was her separate funds which were used in paying for a certain property other than that upon which plaintiff was residing, and she gave details concerning the use and disposition of moneys which, according to her statement, she owned at the time of the marriage and traced a considerable portion thereof into the property in question, her testimony was severely attacked, if not impeached, and the findings and conclusions of the trial court, in conformity with the evidence adduced by plaintiff, that said property belonged to the community of the parties, could not be disturbed on appeal.

(1) 19 C. J., p. 193, n. 32.   (2) 19 C. J., p. 64, n. 27, p. 145, n. 62. (3) 19 C. J., p. 67, n. 55.   (4) 19 C. J., p. 134, n. 36.   (5) 31 C. J., p. 45, n. 63.   (6) 19 C. J., p. 329, n. 72.

APPEAL from a judgment of the Superior Court of Los Angeles County. William C. Doran, Judge. Affirmed.

The facts are stated in the opinion of the court.

4.  See 9 Cal. Jur. 737, 741; 9 R. C. L. 435.

5.  Government homesteads as separate or community property, note, 96 Am. St. Rep. 923. See, also, 5 Cal. Jur. 287; 5 R. C. L. 839. Property acquired from government as community property, notes, 126 Am. St. Rep. 116–118; 26 L. R. A. (N. S.) 1117. See, also, 5 R. C. L. 839.

6.  See 2 Cal. Jur. 921; 2 R. C. L. 194.

F. E. Davis, H. Y. Gibson and L. E. Dadmun for Appellant.

Joseph Scott and Leo B. Ward for Respondent.

HOUSER, J.—In a suit for divorce on the ground of desertion, judgment was rendered in favor of plaintiff, and defendant appeals therefrom.

Among other things, the trial court found that all the allegations contained in plaintiff's complaint were true, as were all the allegations of the answer of plaintiff to defendant's cross-complaint; that certain property, known as the Monrovia property, was community property of the parties; and that certain other property, known as the homestead, was the separate property of plaintiff—all of which findings are attacked generally by appellant on the ground that they are not supported by the evidence.

[1] The gravamen of the first specification by appellant is that no sufficient evidence was adduced at the trial upon which the desertion by defendant of plaintiff could be predicated. However strongly it may have been controverted, it is well established that the trial court was warranted in believing any substantial evidence introduced at the hearing which would sustain the findings against which the criticism of appellant is directed.

[2] It appears that at divers times before an actual separation of the parties occurred, defendant had made statements to several different persons, including plaintiff, to the effect that she would not live on the homestead, which was the home selected by the husband in which the parties were to reside; that "she never wanted to live in the valley (the home of the parties) . . . ; she said she wouldn't live there; that is, wouldn't come back there to live," although the house in which they resided was better than the average home in its locality; that after repeated threats on the part of defendant to leave plaintiff, she finally did so, taking with her all her belongings and all the furniture and furnishings in the home of the parties, with the exception of a couch, bedding and pillows, three chairs, kitchen table, cooking utensils, an oil stove, and "enough to camp with"; that although plaintiff suggested to defendant that she re-

turn to plaintiff's place of abode, defendant at no time attempted in good faith to do so—the evidence in that regard being that plaintiff said to defendant, "Better move up there again, if it is too hard for you down there"; and that the only time within one year from the time of the separation of the parties that defendant offered to return to plaintiff was after she had been away from plaintiff for more than nine months, and then only as a subterfuge and at a time ten days after an announcement had been made by the judge of the trial court on the hearing of a motion in an action for separate maintenance brought by defendant against plaintiff, to the effect that if defendant expected any support from plaintiff she would be required to return to the home which he had provided for her. In that connection it also satisfactorily appeared that the defendant's offer to return to plaintiff was made solely with the idea of saving expenses and attorney's fees, and which offer to plaintiff was accompanied by the threat that if such offer were not accepted, plaintiff would be immediately served with an order to show cause why he should not be punished for contempt of court in failing to obey certain orders of the court in the action for separate maintenance.

While some evidence was introduced which tended to show that the separation of the parties was by their mutual consent, in that plaintiff helped defendant to remove her belongings and the furniture and furnishings in the homestead to the house at Monrovia, it also appears that when defendant told plaintiff that she was going to leave, plaintiff told defendant "it was up to her," and that plaintiff protested against taking defendant to Monrovia, but she insisted that he do so "or she would scatter his (plaintiff's) brains against the wall." Prior to that time "she (defendant) made the statement, said I (plaintiff) had to do what she said or she would put me out of commission while I was asleep." We are therefore of the opinion that the finding by the trial court that "defendant wilfully and without just cause deserted and abandoned the plaintiff against his will and without his consent," is supported by the evidence.

[3] As a part of appellant's contention that the desertion of plaintiff by defendant was not sufficiently established by the evidence, it is pointed out that at a date which was

more than one year after defendant left plaintiff, she returned to the place where plaintiff was living and requested of him that he take her back and that they resume living together as husband and wife. But in a case of desertion the law does not require that after the cause of action has accrued, the innocent party be compelled to accept a proffered reconciliation. It was so held in the early case of *Benkert* v. *Benkert*, 32 Cal. 467, 471, where it is said:

"The counsel for the defendant urge that she repented her act 'prior to the desertion culminating or his gaining a right in the suit.' She manifested no intention of returning until long after the period of two years of wilful desertion had elapsed. Her repentance did not obliterate the offense. If it had been accepted and acted on by the plaintiff, by receiving her and renewing the cohabitation, it would be regarded as a condonation. But he may, after the lapse of the statutory period, refuse to accept the offer. Bishop, section 530, in speaking of the offer to return, says that if it is made in good faith within the period prescribed by the statute to complete the offense, it will bar the suit. 'But after the time has expired and the right of action has fully accrued, the injured party is not obliged to accept such an offer; it comes too late.' "

To the same effect, see *McMullin* v. *McMullin*, 123 Cal. 653, 654 [56 Pac. 554]; *McMullin* v. *McMullin*, 140 Cal. 112, 117 [73 Pac. 808]; *Howard* v. *Howard*, 134 Cal. 346, 349 [66 Pac. 367]; *Vosburg* v. *Vosburg*, 136 Cal. 195, 204 [68 Pac. 694]; *Kusel* v. *Kusel*, 147 Cal. 52, 54 [81 Pac. 297]; *Kenniston* v. *Kenniston*, 6 Cal. App. 657 [92 Pac. 1037]; *Walker* v. *Walker*, 14 Cal. App. 487, 492 [112 Pac. 479]; *Anderson* v. *Anderson*, 68 Cal. App. 218, 222 [228 Pac. 715].

[4] It is next urged by appellant that there was no evidence which either circumstantially or directly corroborated the testimony given by plaintiff on "a considerable number of material facts."

While section 130 of the Civil Code provides in part that no divorce may be granted "upon the uncorroborated statement, admission, or testimony of the parties," and which section in the opinion by the supreme court on petition for hearing therein in the case of *Lemberger* v. *Lem-*

*berger,* 55 Cal. App. 231 [203 Pac. 786], is construed as meaning that there must be evidence in support of the cause of action, "in addition to the evidence of either or both of the parties to the action, and that the testimony of one party cannot be taken in corroboration of that of the other for the purpose of proving a cause of divorce"—from the evidence in the instant case it is clear that the findings made by the judge of the trial court depended not alone on the evidence given by the parties to the action, but were founded upon facts and circumstances adduced from sources independent of either of such parties. Aside from admissions made by defendant to various witnesses, both before as well as after the separation of the parties, that she would not live in the homestead, evidence was introduced to the effect that for many years the parties kept a joint bank account in which was deposited not only the separate funds, but the individual earnings of each of the parties; that a short time before plaintiff and defendant separated, a sale of turkeys and other personal property on the homestead was made for several hundred dollars, which money was paid to defendant; and instead of depositing such funds in the joint bank account of the parties, as theretofore had been their practice, defendant deposited the same in the bank in her own name; that defendant made all arrangements for moving her personal effects and the household furniture and furnishings from the homestead without first informing plaintiff of her intention in the premises other than, as testified by plaintiff, that defendant had frequently threatened to leave him and get a divorce; that in making such removal defendant left with plaintiff such furniture and furnishings only as would barely enable him to "camp out"; that shortly thereafter defendant instituted an action against plaintiff for separate maintenance; that before removing from the homestead, without acquainting plaintiff of her intention so to do, defendant notified tenants in the Monrovia house to vacate same in order that she might occupy it; that defendant absented herself from the homestead for a period of more than one year, with the exception that after nine months had elapsed from the time of her departure from the homestead defendant returned thereto solely for the purpose of collecting money which by a court

order (made in the suit for separate maintenance) plaintiff had been directed to pay to defendant, and at the same time to threaten plaintiff with proceedings in contempt of court should he fail to make such payment.

As hereinbefore indicated, we think the corroboration on the "considerable number of material facts" to which the attention of this court has been directed by appellant, was sufficient to satisfy the terms of the statute to which reference has been had.

It is finally contended by appellant that the finding by the trial court that the homestead was the separate property of plaintiff and that the Monrovia property was the community property of the parties, was "against the law and contrary to the evidence."

[5] With reference to such specification of error, the evidence showed that in 1912, which was before the marriage of the parties, plaintiff filed a desert claim; that although the claim was attacked, in 1917 it was allowed; in 1918, which was after the marriage of the parties, plaintiff changed his application on the same property from a desert claim to a homestead claim and which at the time of the trial had not been perfected.

That a title to land of the character of that here involved, which was initiated by one before his marriage, is his separate property, even though the title was perfected after marriage and with the use in part of community funds, is laid down in principle in the following cases, to wit: *Lake* v. *Lake,* 52 Cal. 428; *Harris* v. *Harris,* 71 Cal. 314 [12 Pac. 274]; *Morgan* v. *Lones,* 80 Cal. 317 [22 Pac. 253]; *In re Lamb,* 95 Cal. 397 [30 Pac. 568]; *Estate of Boody,* 119 Cal. 402 [51 Pac. 634]; *Estate of Pepper,* 158 Cal. 619 [31 L. R. A. (N. S.) 1092, 112 Pac. 62]; *Minium* v. *Minium,* 53 Cal. App. 55 [199 Pac. 1104].

It is therefore indisputable that had plaintiff retained the possessory right acquired by him under the desert claim, such right as he had would have been his separate property.

Section 2291 of the Revised Statutes of the United States in effect provides in part that on the death of the entryman of public lands his widow may be substituted to such rights as the entryman possessed before his death; and the case of *McCune* v. *Essig,* 122 Fed. 588, is authority to the point

that until the claim has been perfected, the claimant has nothing other than a possessory right, which is neither devisable nor descendible; from which it would seem to follow that the interest of the claimant herein, until the issuance of a patent to the property from the United States government, was purely personal to himself, and consequently that no other person, whether his wife, his children or others, had any interest whatsoever in the claim.

In the case of *Barbet* v. *Langlois*, 5 La. Ann. 212, it appeared that before Langlois was married he was the owner of a tract of land which fronted on a bayou. After his marriage he purchased from the United States, by virtue of his right of preference as a "front" proprietor, the lands lying to the rear of the property then owned by him. It was held that because of the fact that before his marriage he was possessed of the right of acquisition of the lands lying to the rear of his estate, such property, although purchased after his marriage, was his separate property. The following is the syllabus in the case with reference thereto: "Under the Code of 1808, where the right to acquire property existed before a marriage although it may not have been acquired until after, the property does not enter into the community. But if paid for out of community funds, the price must be reimbursed to the community."

And the doctrine there announced was affirmed in the similar case entitled *Succession of Morgan*, 12 La. Ann. 153.

In the case of *Minium* v. *Minium*, 53 Cal. App. 55 [199 Pac. 1104], the authorities are reviewed and it is held that a homestead is in the nature of a gift from the United States government; that therefore under the provisions of sections 162 and 163 of the Civil Code, a homestead would be separate property; and the fact that a wife may have advanced money to her husband for the purpose of assisting him to procure a homestead would not affect the title or the character of the property.

Another case, which in its facts resembles the instant case, is that of *Morgan* v. *Lones*, 80 Cal. 317 [22 Pac. 253]. The syllabus therein, which sufficiently indicates the facts, is as follows: "The occupant of lands for whose benefit the townsite acts were passed has an equitable interest in the lands. And if such occupant is an unmarried woman and marries,

such interest is her separate property; and this is so, although the patent from the government to the municipal authorities has not issued. The property does not become community property from the fact that the husband advanced the funds necessary to get a conveyance from the municipal authorities.''

Plaintiff's rights in the homestead are purely possessory and personal to himself. On complying with certain onerous and somewhat burdensome conditions, including much labor and a very considerable expense, to be done and incurred respectively after the interlocutory decree of divorce was granted between the parties to the action, plaintiff might eventually become entitled to a patent to the land from the United States government. But such result would follow only from a compliance on the part of plaintiff personally with such conditions. His divorced wife could not be substituted in his place; nor could plaintiff be compelled to live on the property or otherwise perform the conditions necessary to a ripening of his title thereto. Those things were such that he might do at his option. From a financial standpoint, or from considerations of his good health, he might conclude that other lines of endeavor would be more profitable, and so abandon whatever rights that theretofore had accrued to him. Defendant's ''interest'' was wholly intangible and evanescent—in fact, as in law, it had no existence. We are therefore led to the conclusion that no error was committed by the trial court in its ruling that the possessory and personal right of plaintiff in and to the property in question and known as the homestead was his separate property.

[6] As to the character of the Monrovia property, the evidence was hopelessly in conflict. Plaintiff testified that the initial payment thereon of $20 was made by him from money which he had earned during the married life of the parties; that in addition thereto, he earned money amounting to several hundred dollars, which was deposited by defendant in the joint bank account of plaintiff and defendant, and which money was used in making subsequent payments on the property in question. The price of the property was $1,675, of which at the time of the trial all had been paid with the exception of $400. Defendant testified that it was her separate funds which were used in paying for the

property, and gave details concerning the use and disposition of moneys which, according to her statement, she owned at the time of the marriage and traced a considerable portion thereof into the Monrovia property. However, defendant's testimony was severely attacked, if not impeached, by several witnesses whose opportunities for knowing defendant's financial condition at all times in question were very good; from which fact the force and effect of defendant's testimony must have been much weakened, if not altogether destroyed. At any rate, the judge of the trial court, in the proper exercise of his functions, chose to rely upon the evidence adduced by plaintiff, rather than that presented by defendant in that regard, with the result that the finding and conclusion of law were made that the property belonged to the community of the parties. We find ample evidence justifying such conclusion of the trial court, and in such circumstances the rule is invariable that a judgment founded on such findings cannot be disturbed by this court.

No prejudicial error appearing, the judgment is affirmed.

Conrey, P. J., and York, J., concurred.