[Civ. No. 14313.   First Dist., Div. One.   Oct. 20, 1950.]

ANTONE T. CHRISTIANA, Appellant, v. JULIA ROSE, Respondent.

Taft, Wright & Hopkins and Millard Smith for Appellant.

David O. Oliphant, Jr., for Respondent.

PETERS, P. J.—May a husband, living separate from his wife, the latter having custody of their children, where one of the children is killed by the negligence of a third person, and where the wife sues for and recovers her damages caused by such death, successfully maintain an action against the wife for one-half of her judgment on the theory that such recovery is community property? That is the main question involved on this appeal. The trial court, while holding that the recovery by the wife was community property, held that, under the facts of the case, the husband was estopped from claiming any portion of the judgment. The husband appeals. It is our view that the judgment should be affirmed not only on the theory that if the recovery was community property the husband was estopped from claiming any portion of the judgment, but also because, in our opinion, under the facts, the judgment recovered by the wife was her separate property.

The following time chart presents the key facts:

*March 17, 1940*—appellant and respondent were married, and subsequently had three children, one of whom was named Robert.

*March, 1944*—the parties separated, the respondent wife taking custody of the three children. From the separation until December of 1945, the appellant contributed to the support of the children. Thereafter, he contributed nothing.

*August 9, 1945*—Robert Christiana, the son of the parties, was killed in an automobile accident.

*January 18, 1946*—the respondent filed an action in Alameda

County for divorce, alleging, among other things, that there was no community property. There was no prayer for a declaration of the property rights of the parties.

*March 11, 1946*—interlocutory decree of divorce granted to respondent on default of appellant, the decree being silent as to the disposition of the community property of the parties.

*April 20, 1946*—the respondent, after an ineffectual attempt to notify appellant of the action, instituted, in her own name, an action in the Superior Court of Contra Costa County to recover her damages for the wrongful death of Robert. There can be no doubt, and appellant concedes, that a wife, living separate from her husband, and having custody of their child, may maintain such an action in her own name. (Code Civ. Proc., §§ 376, 377.)

*September 18, 1946*—respondent recovered a judgment. This judgment was affirmed by the appellate court on September 26, 1947 (*Christiana v. Rattaro*, 81 Cal.App.2d 597 [184 P.2d 682]), and the remittitur issued November 26, 1947. The respondent collected $11,642.12 gross on this judgment, and $6,755.84 net.

*June 5, 1947*—final decree of divorce granted to respondent, the decree containing no express reference to the property rights of the parties. Thereafter, respondent remarried, her last name now being Rose.

*July 26, 1948*—the present action was instituted by appellant to recover one-half of the judgment secured by respondent.

The complaint is framed on the theory that the judgment recovered by respondent is community property, and, on that theory, seeks to impose a trust on one-half of the proceeds. The answer alleges two major defenses, first, that the complaint in the divorce action averred that there was no community property of the parties; that the husband was served and defaulted, and thereby admitted the allegations of the complaint; that under such circumstances the husband is estopped to claim there is now community property; and secondly, that the recovery was not community property.

The evidence shows that the husband, after the separation, contributed something to the support of his three children, and after the death of Robert, to the support of the other two, until December of 1945, when all contributions ceased; that although the respondent wife was awarded support for the children and attorney fees in the divorce action, not a cent has been paid thereon; that after the separation, except

for a period of about a year and a half during which the children lived with respondent's mother, the children have lived with respondent; that from the date of the separation until Robert's death, Robert lived with respondent and was in her exclusive control and custody, and appellant exercised no control over him; that respondent paid the funeral expenses of Robert.

The trial court found that when the cause of action arose for the wrongful death of Robert, such cause of action was community property, but that from the time appellant defaulted in the divorce action, all of appellant's rights in the community property, including his rights in the wrongful death action, ceased and terminated. Thus, the theory of the trial court was that the cause of action for the wrongful death of Robert was community property, but that because the respondent in her divorce complaint alleged that there was no community property, and the appellant defaulted, he thereby admitted that there was no community property, and is forever estopped from so claiming, and in particular is estopped from claiming that the proceeds of the wrongful death action are community property.

If it be assumed that the cause of action for the wrongful death of Robert and the proceeds of the judgment were community property, this theory of the trial court would be in accord with the law, and the judgment of the trial court should be affirmed. The divorce complaint, filed in Alameda County on January 18, 1946, alleged ''That there is no community property of the parties.'' The prayer asked for dissolution of the marriage, for the care, custody and support of the children, for attorney's fees, and ''for such other and further judgment in the premises as is meet and proper.'' The interlocutory decree has no specific reference to the property rights of the parties, but it does recite that: ''The above entitled action coming on regularly to be heard this day on the complaint of the above named plaintiff, taken as confessed by the above named defendant . . . and it appearing to the Court that the said defendant was duly served with process herein, and that the default of said defendant for failure to appear or answer herein within the time allowed by law has been duly and regularly entered. . . .'' There is no direct evidence in the present record as to whether appellant was personally served or served by publication in the divorce action, but the interlocutory not only awards respond-

ent the care and custody of the children, but also a fixed sum for their support and maintenance. In addition, on the same day the interlocutory was entered (March 11, 1946), the trial court made an order for attorney's fees against appellant. These orders could not lawfully have been made without personal service on appellant, and he does not attack them in this proceeding. Therefore, under the circumstances here existing, it may reasonably be inferred that appellant was personally served in the divorce action.

Under the decided cases, it is the law of this state, at least where a defendant is personally served in a divorce action and defaults, that, by such default, he admits all of the allegations of the complaint, and is estopped from thereafter challenging them. This is the direct holding of *Brown* v. *Brown,* 170 Cal. 1 [147 P. 1168]. In that case the wife claimed an interest in property acquired by her husband after she had secured an interlocutory, but before the final decree was entered. In the divorce action the wife, as here, alleged that there was no community property. Neither the interlocutory nor the final decree mentioned property rights of the parties. The Supreme Court held that this amounted to a final adjudication that, as of the date the complaint was filed, there was no community property of the parties and both parties were bound thereby, but that such adjudication did not affect property acquired by either after the date of the interlocutory. In so holding the court stated (p. 5) : ''Where a defendant is served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint. The proceeding is equivalent to a statement by Brown to plaintiff that he did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun. When judgment is rendered upon such a complaint and default, it becomes, in effect, a contract between the parties

that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief. [Citations omitted.] Although the final decree is silent as to property, it nevertheless operates as an adjudication that at the time the action was begun there was no community property.''

The above case involved property acquired by the husband after the interlocutory and before the final decree, and the specific holding was that the estoppel did not apply to such property, but in the companion case of *Brown* v. *Brown,* 170 Cal. 8 [147 P. 1171], the court considered an insurance policy acquired by the husband before the divorce action had been commenced. As to it, the court held that the estoppel applied. In so holding, the court referred to the first case and the principles contained in the above quotation, and held that, under that rule of law, ''the judgment of divorce, based upon the complaint declaring that there was no community property, is a conclusive determination against the plaintiff that this property is not community property, and by such judgment she is estopped from claiming any interest whatever in this part of the estate of Brown.'' (P. 9.) (See, also, *Maxwell* v. *Maxwell,* 66 Cal.App.2d 549 [152 P.2d 530]; *Fitzgerald* v. *Herzer,* 78 Cal.App.2d 127 [177 P.2d 364]; *Horton* v. *Horton,* 18 Cal.2d 579 [116 P.2d 605].)

It should be mentioned that we have examined the record in the Brown cases. It appears that the divorce complaint there, as in the instant case, alleged that there was no community property. The prayer of the divorce complaint in the Brown case, as in the instant case, *asked for no relief as to property rights.* The interlocutory and final decrees in the Brown case, as in the instant case, *made no reference to property rights.* Therefore, the Brown cases are on all fours with the instant one.

Appellant correctly points out that the interlocutory and final decrees do not mention the property rights of the parties, and contends that, in spite of the rules of law announced in the Brown cases, before there can be an estoppel there must be an express finding on the subject of community property. The cases cited by appellant in support of this contention are all cases where *both* the complaint and the decrees were silent as to community property. (*De Godey* v. *Godey,* 39 Cal. 157; *Kirschner* v. *Dietrich,* 110 Cal. 502 [42 P. 1064]; *Minium* v. *Minium,* 53 Cal.App. 55 [199 P. 1104].) These cases deal

with an entirely different problem. ■ Of course, where the complaint and decree are silent as to property issues, and the judgment is based upon a default, such judgment cannot be res judicata on any property issue.

Appellant places considerable reliance on *Burtnett* v. *King*, 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333]. There the complaint in a divorce action had alleged that there was certain specified community property, but the prayer of the complaint asked for no relief in reference to such property. Defendant defaulted. The decree awarded the property to plaintiff. The Supreme Court properly reversed, holding that the trial court, in a default case, cannot award a plaintiff greater relief than that demanded in the complaint. (See Code Civ. Proc., § 580.)

That case involved a different problem than that here involved. In the instant case, the court did not, as in the Burtnett case, give the plaintiff in the divorce action relief not prayed for. Here, the divorce decree gave the plaintiff relief that was in exact accord with the prayer of the complaint. The Burtnett case did not discuss or cite the Brown cases, and certainly did not purport to overrule them.

■ Thus, it must be held, if the cause of action for the wrongful death was community property, that the appellant is estopped from claiming any interest therein. This is in accord with the theory of the trial court.

There are other, alternative, and independent reasons why the result reached by the trial court—denying the appellant any portion of the judgment—is correct.

■ Under the facts here involved, we are permitted to take judicial notice of the prior appeal in the wrongful death action, that is, of the case of *Christiana* v. *Rattaro*, 81 Cal. App.2d 597 [184 P.2d 682]. While it has been stated, on occasion, that the courts will not take judicial notice of other actions (*Johnston* v. *Ota*, 43 Cal.App.2d 94, 96 [110 P.2d 507]; *Wolfsen* v. *Hathaway*, 32 Cal.2d 632, 638 [198 P.2d 1]), that rule has many exceptions. It has been held that, in the interests of justice, the court may take judicial notice of proceedings in other cases in the same court. (*Willson* v. *Security-First Nat. Bk.*, 21 Cal.2d 705, 711 [134 P.2d 800]; *Calhoun* v. *Calhoun*, 81 Cal.App.2d 297, 302 [183 P.2d 922].) In the instant case the appellant in his complaint referred to the wrongful death action and specifically alleged the date of the case, its file number in the clerk's office, and the date the appellate court affirmed. Under such circumstances, there can be no doubt but that this court may look at and consider the

records in the wrongful death action. (See *Popcorn Equipment Co.* v. *Page,* 92 Cal.App.2d 448, 453 [207 P.2d 647].)

An examination of those records discloses that the then plaintiff sued for and recovered only for the damage suffered by *her,* and that she did not ask for or receive one cent for the damage, if any, suffered by her husband. The complaint alleged and prayed for *her* damages, and the jury was instructed that they might award her the amount that would "reasonably and fairly compensate *her*" for the loss which *she* had sustained. Thus in that action the present respondent recovered *her* damages and recovered nothing for the community.

Actions for wrongful death are purely statutory. The governing statutes are sections 376 and 377 of the Code of Civil Procedure. Those sections create a cause of action in the *heirs* of the deceased (*Earley* v. *Pacific Electric Ry. Co.,* 176 Cal. 79, 81 [167 P. 513, L.R.A. 1918A 997]), and such cause of action is "a joint one, a single one, and an indivisible one." (*Gilmore* v. *Los Angeles Ry. Corp.,* 211 Cal. 192, 199 [295 P. 41] ; see, also, *Robinson* v. *Western States Gas etc. Co.,* 184 Cal. 401, 410 [194 P. 39] ; *Watkins* v. *Nutting,* 17 Cal.2d 490, 498 [110 P.2d 384] ; *Daubert* v. *Western Meat Co.,* 139 Cal. 480, 482 [69 P. 297, 73 P. 244, 96 Am.St.Rep. 154].)

The record here shows that before the respondent commenced the wrongful death action she tried to inform appellant, but was unsuccessful in locating him. She recovered in that action, as already pointed out, only the loss which she had suffered. She did not sue for or recover any damages that may have been suffered by appellant. Under such circumstances, under settled principles, another heir is not entitled to any portion of the award given to compensate one heir on the theory that he was also an heir. He could, and perhaps should, have been joined as a plaintiff or defendant in the wrongful death action. The omitted heir, however, cannot recover any portion of the judgment awarded the suing heir. The omitted heir's cause of action, if any, is against the suing heir for fraud, if such exists, in knowingly excluding him from the wrongful death action. These principles are well settled.

In *Roach* v. *Drew,* 72 Cal.App. 45 [236 P. 568], an illegitimate child of a deceased mother brought an action to have the surviving husband declared a trustee as to a portion of the damages recovered by him for the wrongful death of the wife and mother. In the wrongful death action the husband

had recovered only for the damages suffered by him. The appellate court affirmed a judgment for the husband based on an order sustaining a demurrer to the complaint. The court stated (p. 48) : ''Since the damages recovered were those only which the defendant herein suffered, and did not include those sustained by plaintiff herein, it is not perceived upon what principle of law the defendant can be deprived of any part of the amount recovered, in the absence of wrongful conduct on his part. If the defendant knew of the existence of plaintiff during the prosecution of his action for damages he might be subject to an action for fraud in omitting her as an heir in his suit.''

The same conclusion was reached in *Watkins* v. *Nutting,* 17 Cal.2d 490, 499 [110 P.2d 384]. There the wrongful death action was brought by some of the children of a deceased father. His children by a former marriage were named as defendants upon their refusal to join as plaintiffs. These defendant heirs defaulted. The plaintiffs recovered a judgment, and, a month later, the defaulting children petitioned to reopen the case for the purpose of taking testimony to establish their pecuniary loss occasioned by the death of their father in order to secure a portion of the judgment entered in favor of the suing children. A motion to strike this motion was granted, and the defaulting children appealed. The court affirmed, holding that the defaulting heirs were entitled to no portion of the award of the suing heirs.

In the instant case respondent's recovery in the wrongful death action was for her damages as the heir of the child Robert. She made no recovery on behalf of the possible other heir—her husband—and made no recovery on behalf of the community. Appellant's remedy, if any, is an action for fraud, if fraud existed, not an action to impose a trust on any portion of the judgment.

There is a third independent, alternative, and conclusive answer to this case, and that is that the recovery by respondent in the wrongful death action, as a matter of law, in our opinion, was not community property, but was the separate property of the wife.

Appellant's argument that the cause of action for wrongful death and the proceeds of the judgment in such action are community property, is based primarily on the rule announced in *Keena* v. *United Railroads of S. F.,* 57 Cal.App. 124 [207 P. 35]. In that case a father brought an action for the wrongful death of a minor child. It was held that the mother's

contributory negligence barred any recovery by the father because "The proceeds of a favorable judgment in such an action become community property." (P. 130.) That rule is based upon, and is a refinement of, the rule that damages suffered by a wife, even though recovered in an action brought by her alone, are, in this state, community property. (*Zaragosa* v. *Craven*, 33 Cal.2d 315, 320 [202 P.2d 73]; *Duncan* v. *Duncan*, 6 Cal.App. 404, 406 [92 P. 310].) But in the Keena case, and in the many cases in which it was held that damages for personal injuries to the wife are community property, the wife was living with the husband. We have found no case in this state where it has been held that damages to a wife living separate and apart from her husband are community property, or holding that damages in a wrongful death action recovered by a wife living separate from her husband and having custody of their child, is community property. Cogent reasons exist why the recovery in such cases should be considered the separate property of the wife.

■ The rule that damages to a wife living with her husband for her injuries are community property has been criticized (33 Cal.L.Rev. p. 627, particularly fn. 29, on page 632), but it is the law, and this court, as an intermediate appellate court, is bound by the Supreme Court decisions. But that rule should not be blindly extended, particularly in view of section 169 of the Civil Code. That section provides: "The earnings and accumulations of the wife, and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife." Although there seems to be no case in this state dealing with the question as to whether damages for personal injuries suffered by a wife living separate from her husband are "earnings" or "accumulations" of the wife within the meaning of this section, other community property states having a statute copied from section 169 have held such damages to be the separate property of the wife. Thus in *City of Phoenix* v. *Dickson*, 40 Ariz. 403 [12 P.2d 618], a separated wife brought an action for her personal injuries. The record did not indicate which party was responsible for the separation. If the recovery was community property, the wife could not, in Arizona, maintain the action. She could maintain the action only if the recovery would be her separate property. The court held that the recovery in such an action was the separate property of the wife, basing its conclusion on its statute

similar to section 169 which it stated was copied from California. The court held that damages to a wife separated from her husband were not "earnings" of the wife, but held that they were "accumulations." In defining that term the court relied upon a definition of it found in *Union Oil Co.* v. *Stewart*, 158 Cal. 149 [110 P. 313, Ann.Cas. 1912A 567] (specifically holding that property acquired by a wife by adverse possession when living separate from her husband was an "accumulation" and therefore her separate property), as follows (p. 620 [12 P.2d]): "When one speaks generally of accumulation of property, he is understood to refer to any property which a person acquires and retains, without regard to the means by which it is obtained."

The same result was reached by the Supreme Court of Idaho in *Lorang* v. *Hays*, 69 Idaho 440 [209 P.2d 733]. There, in reference to a similar problem, the court stated (p. 735 [209 P.2d]) "that a cause of action for damages to the person or character of a married woman, which accrue while she is living separate and apart from her husband, is 'an accumulation,' [and] is her separate property . . . [and] the husband is not a necessary party plaintiff and is not entitled to any of the recovery."

▇▇ The rule of these cases certainly should apply where, as here, a wife separated from her husband and having custody of their children sues for and recovers damages for *her* loss caused by the wrongful death of their child. In such event the recovery is certainly an "accumulation" within the meaning of section 169, and therefore is the separate property of the wife.

For any and all of these reasons the judgment must be and is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.