[Civ. No. 6502. First Appellate District, Division One. — July 18, 1929.]

AMERICAN SODA FOUNTAIN COMPANY (a Corporation), Appellant, v. A. W. MARTIN, Respondent.

Thomas P. O'Brien and Whalen, Harzfeld & O'Brien for Appellant.

Alva S. Sherlock, Archibald B. Tinning and Tinning & DeLap for Respondent.

THE COURT.—This is an action by the payee of three promissory notes to recover $364.25 and interest alleged to be due from the maker of the notes, which notes represent a portion of the installments of the purchase price of a soda fountain sold by plaintiff to defendant under a conditional sales contract for the total price of $2,217. Certain down payments were made and the balance under the contract is payable by a number of promissory notes becoming due during the life of the contract, among which are the notes in suit. The defendant, finding that the machine did not function as plaintiff had asserted it would, failed to pay the first notes coming due, and plaintiff brought this action upon

such notes, the defendant setting up the following defenses: (1) the fraud of plaintiff arising from the misrepresentation of its salesmen which induced defendant to enter into the contract; (2) total failure of consideration; (3) a breach of the implied warranty of merchantability under section 1771 of the Civil Code. The trial court found for the defendant on all three defenses and rendered judgment accordingly, and plaintiff has appealed from such judgment, urging that the evidence does not support the findings.

From the record it appears that the defendant was about to enter the ice-cream business in conjunction with a gasoline service station he was operating in the town of Concord; that he had never been in the soda or ice-cream business, but had been a telegraph operator before conducting a service station and had no information at all concerning the ice-cream business. He went to San Francisco to investigate equipment, and in the course of his shopping he went into plaintiff's salesroom and was shown the machine which was afterward delivered under the contract. It further appears from the record that the agents of plaintiff knew of defendant's ignorance of the ice-cream business, as is evidenced by the testimony of plaintiff's manager, which shows that he explained to defendant the most elementary facts concerning ice-cream storage. Also, plaintiff's salesman, Hugh D. Cameron, told defendant the machine would keep ice-cream at a uniform temperature and laid particular stress on the advisability of buying a mechanical refrigerated fountain over an ice and salt fountain. Cameron went to Concord to look over the possible placing of the fountain in defendant's establishment and spent several hours there discussing the fountain with defendant and explaining to him its construction and operation. It is apparent that the defendant was wholly ignorant of the ice-cream business into which he was about to venture, and plaintiff's agents, skilled men in the business, advised that the automatic refrigerating machine sold by them would keep ice-cream at a uniform temperature and was more suited to his business than a salt and ice pack fountain. It is further apparent that defendant relied upon them to advise him as to the proper equipment upon their knowledge of the purpose for which he intended to use the machine. In order to induce defendant to enter into the contract plaintiff's agents

represented to defendant that this machine would keep ice-cream in proper condition, Mr. Dennis, plaintiff's sales manager, testifying that he told defendant "it would keep his ice cream in a firm condition and that it wouldn't permit him to lose the swell of the ice cream," and according to the testimony of defendant: "He told me it would keep ice cream perfect. It was so insulated that there was no chance for the refrigeration to escape."

There is no question from the evidence but that the machine did not keep the ice-cream in proper condition and that there was continual difficulty due to the ice-cream being soft on the top or frozen on the bottom of the containers, and that this condition of the ice-cream rendered it valueless for sale. It is likewise clear that the agents of plaintiff led defendant to believe that the device he was purchasing would automatically keep ice-cream firm under the conditions confronting him in his place of business. They unequivocally stated that the device would keep ice-cream firm and would not permit him to lose the swell. The evidence further shows that under the best conditions a large part of the ice-cream spoiled while defendant hopelessly asked for assistance from plaintiff. It further appears that before and at the time of the execution of the sales contract there were other machines on the market designed for the same purpose as the machine sold by plaintiff, which would and did store ice-cream for weeks without softening or hardening; that the machine, although sold as having a capacity for storing six five-gallon ice-cream containers, was unable to hold them at a temperature which would permit the ice-cream to be dispensed therefrom; that approximately two-fifths of the capacity of the machine had to be sacrificed in order to operate the machine without loss of ice-cream stored therein. It further appears that from the commencement of the operation of the machine in December until April continuous attempts were made by plaintiff to make the machine operate properly without success, and plaintiff's agent suggested to defendant that he procure other equipment, and finally promised to supply him with a new machine or return him his money. Nothing, however, was done, and plaintiff discarded the machine and purchased another, after which his troubles ceased.

The testimony shows that this defect in capacity was inherent to the machine sold to defendant. W. V. Dennis, plaintiff's manager, testified: "Q. Do I understand, then, that your testimony is, when you set it so it would freeze hard at the top, it was unsatisfactory to have the cabinet so he couldn't dispense below the top? A. It wouldn't be satisfactory, no, to get the best use out of the cabinet we manufactured at that time. It was necessary to get it at a temperature whereby he could dip his cream both at the top and bottom, but unfortunately we hadn't made a soda fountain at that time that would do it." Paul Overmahle, an expert, testified that the machine would not keep the ice-cream in a five-gallon container because the brine level was too low and could not be raised; that the machine would have to be rebuilt to store the ice-cream to the capacity to which it was designed.

The foregoing testimony and the inferences properly drawn therefrom sufficiently support the finding of fraud and misrepresentation that the false statements and representations were wilfully and knowingly made for the purpose of inducing the defendant to enter into the contract; that at the time of making the representations the plaintiff's agents and employees well knew that because of the defective design of the machine it would not keep ice-cream stored therein for more than ten or twelve hours, and in the business of defendant he would require it to be stored therein from three days to a week, and that defendant, wholly relying upon the agents of plaintiff, was induced by reason thereof to enter into the contract and sign the promissory notes, and that plaintiff's agents were skilled in the installation and operation of refrigeration devices of the character of the one sold and that defendant was wholly ignorant and unfamiliar in the handling and dispensing of ice-cream to the retail trade and relied upon the representations of plaintiff's agents.

There is no merit in appellant's contention "that defendant had ample opportunity to investigate the relative merits, and to inquire into the principles of construction and appearance of other soda fountains." Under analogous circumstances the Supreme Court, in the recent case of *Ferguson* v. *Koch*, 204 Cal. 342 [58 A. L. R. 1176, 268 Pac.

342, 344], held: "A purchaser has a right to rely upon the representations of his vendor as to facts not within his knowledge and the vendor cannot escape responsibility by showing that the purchaser might have ascertained upon inquiry that the representations were untrue"—and further: "The general rule is well established that where parties deal fairly, or at arm's length, the rule of *caveat emptor* applies, but where honest dealing is departed from by the vendor making false statements as of his own knowledge, the falsity of which is not known to the purchaser, such purchaser has the undoubted right to rely implicitly upon such statements, and the principle has no application. In other words, the vendor must stand mute, or at least refrain from making statements calculated to deceive."

The facts of the present case seem to bring it under the rule announced in *Ferguson* v. *Koch, supra,* not only as to the vendee's right to rely upon the representations of the vendor as to facts within his knowledge, but also with respect to appellant's objection that "where there is a written contract of sale reciting the terms and conditions of sale, parol evidence is inadmissible to prove fraud," for in *Ferguson* v. *Koch* it is also said: "It is well settled, however, that a writing may be impeached for fraud and a parol warranty really made may then be relied upon rather than the written one, thus shown to be fraudulently imperfect." Furthermore, the rule is well established that parol evidence is always admissible to prove fraud. (*Mooney* v. *Cyriacks,* 185 Cal. 70, 80 [195 Pac. 922], and cases cited.)

Here, as was said in *Ferguson* v. *Koch, supra,* "the trial court having found that the false representations were made, and there being ample evidence in the record to support the conclusion, the judgment must stand," and it becomes unnecessary to discuss the other objections urged. It may, however, be said that the finding that there is a failure of consideration is supported; that "the seller is considered to have warranted that it would correspond with the description or exemplar; and from the circumstances he is deemed to have given an assurance that the chattel was adequate or suitable to the general purpose or ordinary work for which articles of the kind are designed" (22 Cal. Jur., 1002; *Hoult* v. *Baldwin,* 78 Cal. 410 [20 Pac. 864]).

And as the vendee had no knowledge as to the fitness of the machine for the purpose for which he was intending using it, and relied upon the judgment of the vendor, section 1767 of the Civil Code applies: "One who sells, or agrees to sell personal property, knowing that the buyer relies upon his advice or judgment, thereby warrants to the buyer that neither the seller nor any agent employed by him in the transaction knows the existence of any fact concerning the thing sold which would to his knowledge destroy the buyer's inducement to buy." Clearly, had plaintiff's agent told defendant, as he stated when testifying as a witness: "It was necessary to get it at a temperature whereby he could dip his cream both at the top and bottom, but unfortunately we didn't make a soda fountain at that time that would do it," defendant's inducement to buy would have been destroyed.

The judgment is affirmed.