[Civ. No. 5847. Second Appellate District, Division Two.—April 14, 1930.]

PACIFIC FINANCE CORPORATION (a Corporation), Appellant, v. MAJOR D. McGOWAN, Respondent.

MAJOR D. McGOWAN, Respondent, v. PACIFIC FINANCE CORPORATION (a Corporation) et al., Defendants; WESTERN MOTORS COMPANY (a Corporation), Appellant.

Andrew J. Copp, Jr., for Appellants.

Max Lewis for Respondent.

CRAIG, Acting P. J.—The plaintiff and appellant Pacific Finance Corporation, having instituted an action in replevin

against the respondent McGowan for possession of an automobile, the latter joined issue therein, and commenced an action for rescission of a contract of conditional sale under which he acquired the same, naming said corporation and appellant Western Motors Company as defendants. The cases were consolidated, and after trial judgment was rendered rescinding the contract, and awarding to the plaintiff in the second action all moneys alleged to have been paid by him thereunder. Both companies appealed.

Certain of the findings of fact are uncontroverted. It appears that on August 17, 1922, respondent, accompanied by his son, Dorrell McGowan, were shown a Mercer automobile at the salesrooms of Western Motors Company, which he agreed to purchase, and for which he paid on account the sum of $75 in cash and gave a Buick car for which he was allowed a credit of $400. He signed an order designated ''Customer's Deposit Receipt,'' which described the machine as ''one used Mercer automobile, touring 4 Pass.,'' and recited the price as $1,000, from which were deducted the above credits, and Leaving bal due and unpaid $525.00/xx Terms P. F. C. 12 mo.'' Thereafter, on the same date, the parties executed a contract which provided, in part, as follows:

''The seller agrees to sell and the purchaser hereby agrees to buy the following described personal property, to wit:

| ————Mercer | | 4-Pass. Tour | 2295 |
| Serial No. | State License No. | New or Used | No. of Cyls. |
| ———— | 397794 | Used | 4 |

for the sum of $1,137.52, gold coin of the United States of America of the present standard, payable as follows: $475 upon the signing of this contract, receipt of which is hereby acknowledged, and the balance of $662.52 as follows: (specifying twelve monthly payments of $55.21 each) together with such other sums as are hereinafter provided for, it being understood and agreed that the purchase price of the said personal property as above set forth includes interest on the deferred balance to the maturity of each payment thereof, time sale and other charges, if any.

''All deferred payments to bear interest from date of maturity at the rate of eight per cent per annum, payable monthly, and if the interest is not so paid it shall be added

to and become a part of the principal, and thereafter bear the same rate of interest."

On the same date the vendor Western Motors Company sold and transferred to appellant Pacific Finance Corporation all its right and interest in the contract. On September 17th an installment of $55.21 was paid, but none was paid during the month of October. After the third installment became due, respondent tendered $110.42, which was declined except upon condition that he also pay about $80, as expenditures incurred in maintaining the replevin suit, which was then pending. Allegations of fraud and usury were on motion of the plaintiff stricken from the answer of respondent in that proceeding. In his complaint praying a rescission of the contract, it was alleged that the Mercer car was of an older model and of less value than it had been represented by the seller, and that whereas it had been stated and the plaintiff had agreed that he should pay about twelve per cent interest upon deferred installments, the rate specified in the contract amounted to more than twenty per cent per annum; that said representations were false and fraudulent, were made for the purpose of inducing the execution of the contract, that he relied upon and innocently accepted them as true, and would not otherwise have signed the instrument in controversy. Each of these allegations was denied by appellants, and it is here contended that there was no evidence before the trial court which justified the conclusion at which it arrived.

Although the evidence is conflicting, there is evidence tending to support the allegations as to the character of car which was exhibited and which respondent was informed he was getting, and as to that which he actually received. It is not denied that he was uninformed as to models, mechanism or values of automobiles, and was unable to operate one; that he was accompanied by his son who did the driving, and that both made inquiries of the agents of appellant Western Motors Company. They both testified that after protracted watching of the advertisements in newspapers, they visited the company's establishment in response to a list displayed in various publications which included a "1917 Mercer, 4 Pass. with extra equipment, $1000," for which they asked; that they had previously been offered a Mercer car of 1916 model for $900, and that

so stating they endeavored to obtain a reduction in appellant's price, without success. Respondent testified that he "then told them distinctly and repeatedly that we were giving them a hundred dollars more because their car was a 1917 car which we preferred to the 1916"; further, that "Mr. Rogers first and Mr. Nichols afterwards, told us it was 1917 Mercer"; "I would not know anything about the car if he told me everything there was to tell about it. I am absolutely ignorant on the matter of automobiles"; and in answer to the question, "You observed, then, that the column headed 'Model—year' and the column headed 'Serial Number' (in the contract) were both left blank?" He replied: "I did not." The son also testified: "Mr. Nichols said in comparison of the two cars that naturally the 1917 would be better than the 1916 . . . I wanted to buy an axle from them, but it was a 1917 axle and it would not fit my model"; that a mechanic informed him "it was a 1915 and not a 1917, the first time I took the car in there," about four months after the purchase. Said mechanic testified: "I was to sell some parts for the car, and the part they asked for would not fit in that car. . . . That was a 1915 automobile by the Mercer factory"; and that the 1917 model was of greater value than that of 1915. The positive refutation or defective memory of appellants' witnesses of any conversation or even mention of the year model is remarkable. In the order slip and contract, respectively, prepared by this appellant for respondent's signature, it was merely described as "one used Mercer automobile," and as "———— Mercer 4-Pass. Tour 2295 Serial No. ————." Yet appellant Pacific Finance Corporation reported and registered the machine as "Year Model 1917," "Model 22–72 Year Model 17." From the foregoing it is obvious that the respondent was led to believe that the 1915 car was manufactured in 1917. The difference between the order and the final contract as to price of the machine was also attributed by the parties to causes the legitimacy of which is disputed. As heretofore quoted, it appears in the former as $1,000, and in the latter as $1,137.52. Reduced to its final analysis during the trial it appears that the amount contested was ultimately found to be about $30, which appellants contended consisted of necessary incidental charges, whereas the respondent insisted it amounted to an illegal

interest exaction. It is nowhere asserted, however, that respondent was informed that this item would be included, and the court found that the seller had misrepresented to him in this respect.

 Appellants attack the judgment upon the ground that there was an absence of actual fraud, and that respondent so relied upon the judgment of others as to have waived any latent defect. This latter argument is founded upon the fact that the car was demonstrated prior to its purchase, and that it operated properly. Complaint is not made, however, that it would not run, but the grounds alleged for rescission were that it was much older, and of much less value, than as stated by the seller, and that its cost was then even added to after the price had been agreed upon. The issue presented here arose in *Ferguson* v. *Koch*, 204 Cal. 342 [58 A. L. R. 1176, 268 Pac. 342], and various points urged by appellants in the instant case are so aptly discussed and decided that we need but quote therefrom:

"The general rule is well established that, where parties deal fairly or at arm's length, the rule of *caveat emptor* applies, but, where honest dealing is departed from by the vendor making false statements as of his own knowledge, the falsity of which is not known to the purchaser, such purchaser has the undoubted right to rely implicitly upon such statements, and the principle has no application. In other words, the vendor must stand mute, or at least refrain from making statements calculated to deceive.

" . . . The evidence shows that the vendee was not familiar with the different types of motors in use in Reo cars, but had merely heard that those used in the speed wagon type of auto were very good machines. The mere circumstance, therefore, that the vendee made an independent investigation of the truck does not necessarily show that he relied on his own judgment rather than upon the representations of the other party, nor does it give rise to the presumption of law to that effect. A purchaser has a right to rely on the representations of his vendor as to facts not within his knowledge, and the vendor cannot escape responsibility by showing that the purchaser might have ascertained upon inquiry that the representations were untrue. (*Sullivan* v. *Helbing*, 66 Cal. App. 478 [226 Pac. 803]; *Whiting* v. *Squeglia*, 70 Cal. App. 108 [232 Pac. 986].)

The trial court having found that the false representations were made, and there being ample evidence in the record to support the conclusion, the judgment must stand unless it can be said that the evidence concerning the false representations was improperly received.

"This brings us to the question whether or not parol evidence is proper to prove false representations where there is a written contract of sale. The rule is, of course, well settled that, where the parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, be conclusively presumed that the writing contains the whole of the agreement between the parties, and that it is a complete memorial of the same, and parol evidence of prior, contemporaneous or subsequent conversations or representations or statements will not be received for the purpose of adding to or varying the written instrument. . . . It is equally well settled, however, that a writing may be impeached for fraud, and a parol warranty really made may then be relied upon rather than the written one thus shown to be fraudulently imperfect or defective. . . . Appellant has cited us to certain earlier cases in our reports which he claims make a distinction between fraudulent representations going to induce the making of a contract and representations in the nature of warranties. There is no reason why any such distinctions should exist, and, in fact, none does exist."

In the cited case it appeared that the purchaser had been assured that the motor of the automobile in question was of a type used in 1925 machines; that the machine was demonstrated, and apparently satisfactory, but that later discovery that the motor in the car was a 1917 model furnished ground for rescission of the contract in an action by the vendor thereon after default in the payment of installments. That actual intent to defraud is not requisite to rescission in such cases has repeatedly been decided. In *Scott* v. *Delta Land Co.*, 57 Cal. App. 320 [207 Pac. 389], it was said:

"In a civil action the good faith of the party who procures the assent of another to the making of a contract by material misrepresentations is of no moment. 'Many courts lay down the rule that the misrepresentation is considered to be constructively fraudulent because of its effect of im-

posing upon the deceiving the person to whom it is made.' (12 R. C. L. 343, par. 98.) The rule of the criminal law requiring proof of a specific intent to defraud in false pretence cases does not apply to civil actions."

Other decisions applying these familiar rules in recent cases are: *American Soda Fountain Co.* v. *Martin,* 100 Cal. App. 43 [279 Pac. 680]; *Pashley* v. *Wukejevich,* 104 Cal. App. 232 [285 Pac. 910]. ■ Grounds for civil relief are embraced within the provisions of section 1572 of the Civil Code, that is to say: "The suggestion as a fact, of that which is not true, by one who does not believe it to be true," or "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

■ It follows that whether the seller's agents disbelieved or were otherwise unwarranted in making the representations, becomes immaterial, since deliberate intent to defraud is not indispensable to rescission. ■ And, in view of considerable substantial evidence that the representations were made, we are not authorized to say that the trial court was not justified in concluding that material facts were suggested or positively asserted which, within the contemplation of said section, affected the validity of the transaction.

■ It is urged that respondent is estopped to defend upon these grounds for the reason that the year-model having been left blank he was put upon his inquiry, and that he did in fact learn of the defect in September, when the installment was paid for that month. However, he positively testified that he implicitly relied upon the seller in this respect after having made diligent inquiry, that the latter discouraged his reading the contract, stating that he would forget the first part by the time he had read toward the last, and that he did not notice the omission. Respondent also swore positively that he did not learn that it was a 1915 model until December, or nearly four months after the sale, when informed of the pendency of the claim and delivery action, and within but a few days prior to serving notice of rescission. Here again the trial court may well have deemed the omission of significance and as indicating an intentional attempt to obscure the facts rather than as a warning of necessity for inquiry. It was warranted in

believing any substantial evidence tending to sustain the findings rendered. (*Meyer* v. *Meyer*, 82 Cal. App. 313 [255 Pac. 767].)

From what has been said it becomes unnecessary to discuss at length other points urged by the parties, and particularly respondent's challenge of the validity of the contract under the finding that excessive interest was being added to deferred payments. By complete rescission the judgment restores them as nearly as may be to their former status. (Stats. 1919, p. lxxxiii, sec. 2; *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805].)

The judgment is affirmed.

Thompson (Ira F.), J., and Norton, J., *pro tem.*, concurred.