[Crim. No. 1678. Second Appellate District, Division Two.—March 19, 1929.]

THE PEOPLE, Respondent, v. CHARLES E. LLOYD, Appellant.

Thos. P. White and A. P. G. Steffes for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

WORKS, P. J.—Defendant was charged with the crime of manslaughter and was convicted. He appeals from the judgment and from an order of the trial court denying his motion for a new trial.

The killing which led to appellant's conviction was involuntary. The catastrophe occurred at about 10 o'clock at night. Immediately preceding the tragic event appellant, along with a large number of other drivers of automobiles, was held on Wilshire Boulevard, in the city of Los Angeles, at the easterly line of Western Avenue, by the automatic traffic signals maintained at the intersection. As the assembled cars stood, in several lines, appellant was at the extreme left and at or near the middle line of Wilshire. Upon proper signal the cars moved forward in a body, crossed Western and moved westward along Wilshire. A short block west of Western, and parallel to it, Manhattan Avenue enters Wilshire from the north, but is not prolonged across it. One Lloyd Youmans had parked his automobile at the south curb of Wilshire immediately opposite the confluence of Man-

hattan with that thoroughfare. He had crossed Wilshire afoot for the purpose of doing some shopping on the north side of the boulevard. This duty having been performed, he was returning to the south side of Wilshire along an imaginary prolongation of the easterly sidewalk of Manhattan. He reached a point at or near the middle of Wilshire as the traffic lately released from the Wilshire-Western intersection approached from the eastward. At the middle of Wilshire, and upon an imaginary prolongation of the easterly curb line of Manhattan, a traffic "button" was embedded in the pavement. At or near this point Youmans stopped and looked toward the west, but apparently not toward the east. He was then run down by the car driven by appellant and was killed. There was much evidence that, because of the great number of headlights approaching the Wilshire-Manhattan intersection from both directions, along Wilshire, it was very difficult to see Youmans as he stood near the traffic button. Indeed, the drivers of some cars did not perceive him until an instant before he was struck down. Appellant says he saw him when he was about sixteen feet from appellant's car and directly ahead. However, there was ample evidence that at the moment of the catastrophe a part of appellant's car was two or three feet southerly from the traffic button, that appellant was driving at the rate of forty miles an hour and that he was intoxicated.

 Appellant complains that the trial judge refused to give to the jury various instructions proffered by him, and no other points are made for a reversal. In defending one of the refused instructions appellant says that, the killing of Youmans by him having been shown by the prosecution, the burden was cast upon appellant to excuse or mitigate his apparent offense, and that the instruction was offered for the purpose of acquainting the jury with a rule of law to the effect that the excuse or mitigation need not be shown beyond a reasonable doubt, nor even by a preponderance of the evidence. The instruction was unnecessary, as no such burden as appellant contemplates is cast upon a defendant in a manslaughter case. Section 1105 of the Penal Code reads: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only

amounts to manslaughter, or that the defendant was justifiable or excusable." This section seems so plain as to completely answer appellant's contention. As the burden to which appellant refers is not imposed upon the defendant when the charge is murder and the evidence of the prosecution tends to show only that he is guilty of manslaughter, it would seem obvious that the legislature did not intend to cast the burden upon a defendant when the original charge is manslaughter. Certainly, the section does not say that the burden is cast upon one charged with the latter crime. However, it has been decided that, under a charge of assault with intent to commit murder, section 1105 has no application, as the "principle of the shifting of the burden of proof in cases of homicide is purely a creation of the statute, and must be limited to the words of the statute" (*People* v. *Gordon*, 88 Cal. 422 [26 Pac. 502]. See, also, *People* v. *Lopez*, 81 Cal. App. 199 [253 Pac. 169]). The mandate of the section, by its express terms, is limited to "a trial for murder." The instruction was properly refused.

Appellant offered an instruction designed to acquaint the jury with the general rule that the making of a criminal charge against one raises no presumption of his guilt, and it was refused. After saying that an indictment does raise such a presumption under certain circumstances, appellant proceeds in his brief: "This presumption, however, does not apply during the trial of a defendant before a petit jury. The reasoning of the rule adopted by the courts is that the facts of the case have been passed upon by a grand jury of reputable citizens and that their verdict, we might say, expressed by the filing of their indictment is sufficient to create a presumption of guilt for certain purposes. The trial jury in this case having been apprised of the indictment of the defendant by the grand jury, should in the interests of justice have been cautioned concerning this matter of such great importance to the defendant." We think the proffered instruction was unnecessary and that it was therefore properly refused. The jury was instructed fully as to the presumption of innocence and concerning the doctrine of reasonable doubt. Particularly, the text of section 1096 of the Penal Code was given. This section contains the statement that "a defendant in a criminal case is presumed to be innocent until the contrary is proved," and it exhibits

a satisfactory definition of "reasonable doubt." Section
1096a of the same code reads: "In charging a jury, the
court may read to the jury section 1096 of this code, and
no further instruction on the subject of the presumption of
innocence or defining reasonable doubt need be given."

One of appellant's claims of error relates to a
lengthy instruction which was offered, but which was re-
fused. It is necessary to quote but a part of this proposed
instruction in order completely to justify the action of the
trial judge in declining to present it to the jury: "The
Court instructs the jury that under the provisions of Sec-
tion 20 of the Penal Code of this State, in every crime of
public offense there must exist a union, or joint operation
of act and intent, or criminal negligence. Now, in cases of
this kind, where the Indictment charges manslaughter, the
overt act, of course, consisting in the driving of the automo-
bile, and, of course, there is no deliberate intent charged
against a person in a manslaughter case such as this one;
that the defendant deliberately intended to kill the de-
ceased; but the law says that one may be guilty of a crime,
to-wit, manslaughter, if as a result of their act a person is
killed, although they may not have any intent to kill the
person, provided only, however, if they are guilty of crimi-
nal negligence. In this case, therefore, in order to sustain a
conviction, the prosecution must prove to your satisfaction
beyond a reasonable doubt that the defendant was guilty of
criminal negligence, and unless the prosecution does prove
to your satisfaction beyond a reasonable doubt that the de-
fendant Charles E. Lloyd was guilty of criminal negligence
then he is entitled to an acquittal; because unless there was
criminal negligence on the part of the defendant Charles E.
Lloyd, then there is no joint operation of the act and in-
tent, or criminal negligence, necessary to constitute a crimi-
nal offense. Now the word negligence, according to Subdi-
vision 2 of Section 7 of our Penal Code, means a want of
such attention to the nature or probable consequences of the
act or omission as a prudent person ordinarily bestows in
acting in his own concerns. Therefore, before you can be
convinced beyond a reasonable doubt that this defendant
Charles E. Lloyd was guilty of criminal negligence you must
be convinced beyond a reasonable doubt that he did not use
due caution or circumspection on the night of the accident,
to the extent of culpability." This language—and there

was nothing in the remainder of the proffered instruction to correct it—was bound, if read to the jury, to give that body an incorrect understanding of the law. The request was, in effect, that the jury be told that, in order that a conviction might result, it must be found that appellant was guilty of criminal negligence. Such a finding was not necessary as a prelude to a verdict of guilty. The jury might have refused to believe that appellant was driving at an excessive rate of speed at the time of the catastrophe, and that he was on the left side of the thoroughfare, and yet might have convicted him under a finding that he was driving his car while in a state of intoxication. That part of section 192 of the Penal Code which relates to actions like this is to the effect that involuntary manslaughter may occur "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act in an unlawful manner, or without due caution and circumspection." If the jury had determined to convict appellant solely because he was driving while intoxicated, its verdict would have resulted under that part of section 192 relating to the "commission of an unlawful act, not amounting to felony" and not under that part of it which follows the language just quoted, as section 367d of the Penal Code makes it a misdemeanor to drive an automobile while intoxicated, while under section 112 of the Motor Vehicle Act (Stats. 1923, p. 517; Deering's Gen. Laws, 1923 ed., Act 5128) the offense may be either a misdemeanor or a felony. It seems a contradiction of terms to say that criminal negligence is predicable of an act which is a crime, and we have found no definitions to the effect that negligence is an element or a characteristic of any act positively denounced as a crime. Indeed, subdivision 2 of section 7 of the Penal Code seems to indicate directly the contrary. The section declares the signification to be accorded certain words found in the code, and the subdivision reads: "The words 'neglect,' 'negligence,' 'negligent,' and 'negligently' import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." It can hardly be said that an act which constitutes a positive crime can bear any relation to the want of attention a prudent man, acting in his own concerns, ordinarily bestows "to" the nature or probable consequences of his acts or omissions. Crimes like those de-

fined by section 367d of the Penal Code and 112 of the Motor Vehicle Act do not spring from lack of prudence, but from a wilful disobedience of the express mandates of penal laws. We do not fail to observe that these considerations may make it necessary some time to determine whether section 20 of the Penal Code, referred to in the proposed instruction, comprises at the present day a complete statement of the point which the legislature assumed to treat when the section was enacted. If one driving an automobile while intoxicated is not guilty of criminal negligence—and it may be observed here, in addition to what has already been said, that at some stages of drunkenness some men may drive with great caution and circumspection—if, we say, he is not guilty of negligence, then is there, when he is charged with manslaughter, "a union or joint operation of act and intent"? There is an intent to drive while intoxicated, but is that intent of interest when the charge is involuntary manslaughter? Can intent ever be of interest under such a charge, when death has resulted through the "commission of an unlawful act," as to which act itself the intent is clear? We do not answer these questions at present, but it appears not to be improper now to state them.

██ The trial judge refused to give, upon the request of appellant, an instruction which contained the following: "I instruct you that in order to convict the defendant of the crime of manslaughter charged in this Indictment on the ground that the defendant was engaged in the commission of a lawful act, the prosecution must prove that the lawful act was one which might produce death, and which did produce death, and the prosecution must go further and prove to your satisfaction beyond a reasonable doubt that the lawful act was done in an unlawful manner. Before you can convict this defendant of the crime of manslaughter as charged in this Indictment on the theory that the defendant was engaged in the commission of a lawful act without due caution and circumspection, you must be convinced beyond a reasonable doubt that the actions and conduct of the defendant on the night in question were culpable, that is to say, that he, and he alone, was to blame for the accident." It will be observed that the first sentence of this quotation closes with the statement that "the prosecution must go further and prove . . . that the lawful act was done in an unlawful manner." This is not a correct statement of the

law. By the terms of section 192 of the Penal Code an involuntary manslaughter may result from the commission of a lawful act either "in an unlawful manner" or "without due caution and circumspection." The second sentence in the quotation we have made from the proffered instruction adds ambiguity and uncertainty to the inaccuracy of statement inherent in the first. The first sentence refers, generally, to the commission of a lawful act and says, as we have seen, that it must have been committed in an unlawful manner. The second sentence refers, specifically, to a lawful act committed without due caution and circumspection, and assumes to state a rule of law as to such an act committed in that manner. In other words, the first sentence positively excludes a lawful act committed without due caution and circumspection, while the second, immediately following this shutting of the door, proceeds to treat of the excluded subject. The jury could not have understood such an instruction and it was therefore properly refused.

Appellant proposed the following instruction, which was refused: "The phrase, 'without due caution and circumspection,' as used in the definition of manslaughter, means the doing of an act, otherwise lawful, in a culpable or reckless manner. I therefore charge you that before you can find the defendant guilty of manslaughter on the theory that he performed a lawful act, which might produce death, in an unlawful manner, without due caution and circumspection, you must be convinced beyond a reasonable doubt that the defendant drove his automobile in a reckless manner, that is to say, in disregard of the rights of pedestrians and other vehicles upon Wilshire Boulevard at the time of the accident, and unless you are so convinced, then I charge you that you should acquit the defendant." That this instruction is ambiguous, and that, if given, it must have confused the jury, is to us patent. The phrase, "without due caution and circumspection," is first defined and the proffered instruction then *therefore* charges what must be shown the jury before it can convict because of the commission of a lawful act "in an unlawful manner, without due caution and circumspection," whereas, under the language of the statute, the meaning of the phrase "without due caution and circumspection" bears no relation to the idea conveyed by the phrase "in an unlawful manner." The statute, in so far as it is touched upon in the proposed instruction now

under examination, as we have already pointed out, contemplates the crime of manslaughter as arising from a lawful act, committed in an unlawful manner *or* without caution and circumspection. It will be observed that the proffered instruction is also complicated by the omission of this word "or" in the place in which it ought to occur. The instruction was properly refused.

 The trial judge refused to give the following proposed instruction: "The court instructs the jury that where doubt exists as to what conduct a defendant should have pursued in a particular case, and intelligent men and women differ as to the proper action to be had, the law does not impute guilt to anyone, if, from the omission to adopt one course instead of another, fatal consequences follow. Therefore, if in the situation which confronted this defendant at the time of the accident in question, you feel that he made an error of judgment in the course which he took, and you feel that by taking another course that was open to him the accident could have been avoided, but that he did not commit an unlawful act, not amounting to a felony, or do a lawful act, which might produce death, in an unlawful manner, and that he did not act without due caution or circumspection, then I instruct you that your verdict should be for the defendant and you should acquit him." Appellant complains of the refusal because of the presence in the offered instruction of the language relating to the conduct which a defendant in such a case as this should pursue when confronted with an emergency. We think the point was sufficiently protected by an instruction which the judge gave and which reads thus: "The court instructs the jury that if from the evidence you believe that at the time of the accident in question the defendant was not guilty of negligence and was exercising that care, circumspection and caution which an ordinarily prudent man, seeing what the defendant saw, confronted with what confronted the defendant, surrounded by traffic and other conditions as was the defendant, would have exercised, then I instruct you it is your duty to return a verdict of not guilty." We refer to this instruction merely as meeting the point made here by appellant, without considering whether it was in all respects proper.

 Appellant asked for the following brief instruction: "In respect to all verbal statements or alleged admissions,

674

it may be observed that these ought to be observed with caution." The request was refused and appellant contends that the ruling was error. We think it was not. The offered instruction is so general as to be meaningless. We think the jury could not possibly have understood what was meant by it if it had been given.

The closing portion of appellant's brief commences thus: "Without burdening this court with an extended quotation of the several other instructions requested by the defendant that were refused by the trial court, we shall merely refer to the pages of the clerk's transcript upon which these instructions occur. We would request permission in the event that the same becomes necessary to argue these points on oral argument to demonstrate their applicability to the issues presented to the jury." From this beginning it was not to be expected that the points made upon "the several other instructions requested" would be so presented as to require us to decide them, and they are not. Not "several," but many, requested instructions are laid before us either without sufficient means of identification of their contents or without appreciable argument, sometimes without either. We are not called upon to decide points so meagerly presented. The oral argument referred to in the quotation has never been requested and the statement concerning it has first come to our attention since the submission of the cause for decision.

Judgment and order affirmed.

Craig, J., and Thompson (Ira F.), J., concurred.