[Crim. No. 1888. Fourth Dist. Nov. 4, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM JOHN YUHAS, Defendant and Appellant.

62

Richard E. Adams and Thomas Whelan for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson and H. Warren Siegel, Deputy Attorneys General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant was charged by indictment with murdering his wife, Mildred F. Yuhas, on July 22, 1962, in violation of Penal Code, section 187. He was also charged with two prior convictions of a felony, attempted robbery with firearms and murder in the second degree. He served separate terms in prison therefor. He pleaded not guilty to the charge and admitted the two prior convictions. He was found guilty by a jury of the crime of involuntary manslaughter, a lesser included offense. His motion for new trial was denied, as well as his application for probation. ■ Defendant first claims on appeal that the evidence was insufficient to sustain the verdict.

Defendant and his wife were married in 1952. He operated a nursery in the town of Borrego. His wife had been previously married to Theodore Nelson, Sr. Her son by that marriage, Ted Jr. (hereafter referred to as Nelson), lived with his wife and children, about one mile from his mother. There had been marital trouble for three or four years between defendant and his wife, Mrs. Yuhas. He had locked her out of the house on numerous occasions, and on other occasions had refused to speak to her, making it necessary for her to write notes to defendant in order to communicate. Bruise marks were noticed on her neck on several occasions. Ill feeling existed between defendant and Nelson. Nelson disliked defendant because he had often seen bruises on his mother and he had objected to defendant about this treatment of his mother and had offered to fist-fight defendant. There was evidence that Mrs. Yuhas had great fear of her husband. On one occasion she took her clothes and said she was leaving defendant.

On the day before she was killed, she told her sister that she was afraid for her life, but that she was tired of running from him, and· if defendant intended to do anything he might as well do it and get it over with.

It appears that the victim, Mrs. Yuhas, had written a letter (exhibit 29) that foretold what defendant might do. The

letter was given to her sister. It was dated March 24, 1961, and read as follows:

"To Whom It May Concern:

"If any harm should be done to me I want to say now that the first suspect would be my husband.

"He gets so angry that sometime I think that he will not be able to control his temper. He has hit me and choked me until I had bruises that I had to cover my throat with a scarf.

"Last Sunday March 19, I woke up and he was choking me. He has been mad at me for three weeks now, and he is trying to kick me out. He said he was going to tell so many lies about me, that I would not be able to live here. He already has it that I'm a drunkard, that I go out with men. Last night March 23 he claimed I went to Mexico with a man, he said he was sitting in his car in the front of the house when I pulled in and had a man with me. He claims he heard us planning to go to Mexico. This he told my son.

"My husband is either insane and is suffering from hallucinations. Ever since I have been married to him he has accused me of going out with men, even after one month of marriage. It got so bad that I was afraid to wait upon a man customer, for fear it would start an argument. It seem now that his sanity is going or else he just wants to get rid of me so he can have everything for himself. Perhaps there is another woman, why should any man act the way he does?

"Mildred F. Yuhas."

Objection was made to the admissibility of this letter, and it is now the main contention on appeal that it was error to receive it in evidence.

It appears that on July 21, 1962, the day before she was shot, Mrs. Yuhas went over to her son's house and she and Nelson's wife persuaded Nelson to drive them to Julian in his truck for the evening. Nelson had an unloaded rifle in his truck. On their return, they stopped and visited with Nelson's boss. About midnight, Nelson and his wife dropped Mrs. Yuhas at her home and waited to see if she had been locked out. The lights were on. She found the house unlocked and they drove off. When they arrived at their home, their baby-sitter said that a man had telephoned; that he sounded as though he was drunk and said "Tell Mildred someone is going to have fun tonight. No, tell her someone is going to die." There were four additional calls, but when she answered the telephone the caller would hang up. The baby-sitter

said that she recognized defendant's voice as the one that spoke to her on the telephone. Nelson left for the Yuhas residence. His wife telephoned the Yuhas residence. Defendant answered and said "You both will die." On his arrival at the Yuhas home, Nelson took his .222 rifle from the truck and inserted three bullets. He overheard an argument going on inside the house. He went to the front door, kicked it, and Mrs. Yuhas came running out. She closed the door behind her and told Nelson to get out of there, and she pushed him. Nelson then heard a shot and felt his mother become tense, and she said "He shot me." Nelson turned and shot his rifle through the door two or three times. He then dragged his mother to his truck and drove to the doctor. She was dead at that time. Defendant followed Nelson's truck to the doctor's house but did not stop. He was later apprehended by the sheriff. Investigating officers found one rifle hole in the door going from the inside out and two from the outside in. The bullet killing Mrs. Yuhas came from a .22-caliber rifle kept in the Yuhas home. A bullet of this caliber was found in Mrs. Yuhas' spine. It was determined that this bullet was shot by defendant from about one inch back from the inside of the front door.

Defendant admitted that difficulties with his wife had increased over the past several years. He admitted that over this period he had slapped, shoved and hit her on occasions and admitted locking her out of his house at least ten times and that Nelson was angry about this. He testified that at the time of the shooting he was trying to get away from Nelson when he shot through the door with the .22-caliber rifle. He said that he heard Nelson shoot through the door and he then ordered him out with threats to kill him, but that he did not intend to hit anyone. He further testified that on a previous occasion Nelson came to their home, called him a vile name and threatened to kill him and fired two shots; that he (defendant) climbed out of the window and fled to an officer's home for protection. He testified that on the occasion of the shooting of his wife, he only intended to protect himself if Nelson came into his home, and that his gun was fired accidentally.

Defendant produced a number of character witnesses who testified that he had a good reputation. Several stated that Nelson had a bad reputation.

It is argued that the physical evidence and the factual situation shows, as a matter of fact and law, that the killing

was accidental, or that it was an excusable or justifiable homicide.

Guided by the time-honored rules, a mere recitation of the evidence does more than support the verdict of the jury convicting defendant of the included offense of involuntary manslaughter. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Redrick,* 55 Cal.2d 282, 289 [10 Cal. Rptr. 823, 359 P.2d 255].)

As to the admission of exhibit 29 (the letter written by deceased), over objections, for which defendant claims prejudicial error, defendant cites such authority as *People* v. *Hamilton,* 55 Cal.2d 881 [13 Cal.Rptr. 649, 362 P.2d 473]. In the *Hamilton* case, on page 893, it was held that: "Undoubtedly, in a proper case, and in a proper manner, testimony as to the 'state of mind' of the declarant, where that is an issue in the case is admissible, but only when such testimony refers to threats as to future conduct on the part of the accused, where such declarations are shown to have been made under circumstances indicating that they are reasonably trustworthy, and when they show primarily the then state of mind of the declarant and not the state of mind of the accused. But there are and should be rigid limitations on the admission of such testimony. One of these limitations is that such testimony is not admissible if it refers solely to alleged past conduct on the part of the accused." And it was there held that erroneous admission of declarations of the deceased—defendant's former wife in a homicide case—as to her fear of defendant, based solely on his past conduct, were prejudicial where it was reasonably possible that such declarations could have tipped the scales against defendant and were so serious as to have deprived him of a fair trial.

In the instant case, the court repeatedly told the jury that the only purpose of receiving this letter in evidence was to show the state of mind of the decedent, Mildred Yuhas. In *People* v. *Atchley,* 53 Cal.2d 160 [346 P.2d 764], the defendant claimed that he shot in self-defense. In that case, as in the instant case, the victim had written a letter in which she stated that she was in fear of her life. The opinion there points out, on page 172: "The letter was admitted, however, with a limiting instruction, solely to show the deceased's state of mind and not to show that defendant had threatened her. It was therefore not objectionable as hearsay." In the instant case, the defendant testified that he was in fear of Nelson and that he had picked up the rifle and leveled it at the door to protect his own life. He even stated that there-

after he retained possession of the rifle when he drove over to the doctor's house because, as he said, he was still afraid. His whole contention was one of fear and self-protection. Numerous instructions were given at his request covering justifiable homicide and self-defense. (*People* v. *Brust*, 47 Cal.2d 776, 785 [306 P.2d 480] ; *People* v. *Feasby*, 178 Cal.App.2d 723, 734 [3 Cal.Rptr. 230].) Suffice to say, we have examined the entire record and conclude that in the present case defendant could not have been seriously prejudiced by this evidence in view of the verdict found by the jury. He is not in a position to show any substantial prejudice from the jury's consideration of the wife's letter, even if it was erroneously admitted. The jury could scarcely have been more considerate of defendant's defense evidence than to reach a verdict of involuntary manslaughter. The jury knew that defendant had been previously convicted of both second degree murder and attempted robbery, and they must have considered these facts and given little if any consideration to the prosecution's proof of his malice toward the deceased. His malice was evidenced by his admitted acts in striking and shoving the deceased, in locking her out of the house, and in refusing to speak to her, also by the evidence of his telephone calls to the baby-sitter and Nelson's wife, before the shooting, in which he stated his intentions to shoot two people. The jury must have virtually disregarded all of this evidence of malice and concluded to limit the verdict to involuntary manslaughter and to let defendant be punished for the lesser included offense. No prejudicial error or miscarriage of justice resulted. (Cal. Const., art VI, § 4½.)

Defendant claims error in the refusal of the trial court to give his proposed instruction to the effect that the jury should consider Nelson's reputation and defendant's knowledge of it, in determining whether defendant was afraid when he shot Mrs. Yuhas. This proposed instruction assumed that the evidence established Nelson's reputation and that defendant's knowledge of it prompted defendant to act through fear. Either party may present instructions on the law but not on the facts. The credibility of the witnesses was for the jury to determine. (*People* v. *Wescott*, 99 Cal. App.2d 711, 715 [222 P.2d 256].) The court gave extensive instructions on the law of self-defense, on the right of a person to repel an assault, on the right to eject a trespasser and to defend his habitation. The subject matter was sufficiently covered.

■ The next complaint involves a proffered instruction covering an unintentional assault upon a bystander by a random shot fired in the prudent exercise of the right of self-defense.

Here, there was an issue of fact with regard to defendant's intentions. The shot fired by defendant did not appear to be a random shot fired by him amounting to an assault upon a bystander. Mrs. Yuhas was an active participant. The instruction as prepared was properly refused and was sufficiently covered by other instructions on the subject.

It is clear from the record that every effort was made by both trial counsel and the trial court to be certain that defendant was fully and fairly tried for the killing of his wife. Although there was evidence of malice and much of that evidence was not controverted, the jury eliminated malice from the verdict and determined upon a verdict of involuntary manslaughter. We see no prejudice to the defendant's substantial rights requiring any different finding by a reviewing court.

Attempted appeal from order denying new trial and denying application for probation is dismissed. (Pen. Code, § 1237.)

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.