[Crim. No. 5987. First Dist., Div. One. Jan. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER WYNN, Defendant and Appellant.

Gary C. Britton, Public Defender, and Martin Drobac, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant appeals from a judgment, convicting him of manslaughter in violation of section 192 of the Penal Code, and sentencing him to state prison following denial of probation. Judgment was pronounced and rendered after a finding of guilt in a court trial on an amended indictment[1] which charged that on July 2, 1966 defendant unlawfully killed his wife upon a sudden quarrel, and that in the commission of the offense he was armed with a deadly weapon.

Defendant contends that the evidence is insufficient to sustain a finding of his guilt because no substantial evidence was adduced in the court below to show (a) that he acted with a specific intent to kill, (b) that he shot his wife upon a sudden quarrel or in heat of passion, or (c) that he fired a revolver at his wife of his own volition. He complains that the court erroneously excluded evidence which would tend to show a lack of specific intent. He finally urges that the in-

---

[1] On July 6, 1966, an indictment was filed by the grand jury of Santa Cruz County, charging the defendant, Walter Wynn, with the murder of his wife, Effie Wynn, on July 2, 1966. The indictment was returned after the grand jury had heard the testimony of Ricky Wynn, the defendant's young son, and of a doctor, who testified as to the nature of Effie Wynn's death.

On July 7, 1966, the defendant was arraigned on the charge of murder. On July 28, 1966, he pleaded not guilty and requested a jury trial. On August 11, 1966, the defendant moved to enter a additional plea of not guilty by reason of insanity. The court appointed two alienists to examine the defendant. On September 1, 1966, the court found, after considering the reports of the alienists, and examining the defendant, that he was able to proceed in his own defense. The court thereupon denied defendant's motion to enter the plea of not guilty by reason of insanity.

On September 6, 1966, the grand jury filed an amended indictment accusing the defendant of manslaughter, and further charging that defendant was armed with a deadly weapon. On September 8, 1966, the defendant was arraigned on the amended indictment, pleaded not guilty, and waived a jury trial.

sufficiency of the evidence to support the charge of voluntary manslaughter compels a reversal of the judgment, or, at the very least a modification of the judgment to a conviction of involuntary manslaughter.

It is concluded on review that there was no prejudicial error in the exclusion of evidence, that the evidence supports the conviction, and that the defendant is not entitled to reversal or modification of the judgment.

*Statement of Facts*

On the evening of July 2, 1966, in the bedroom of their apartment in Watsonville, California, defendant, Walter Wynn, shot and fatally wounded his wife Effie. Defendant's two sons, Billy Wynn, age 11, and Ricky Wynn, age 13, and Charles Lamb, age 13, a friend of the two boys, were present in the apartment at that time.

Prior to the shooting, Effie Wynn had been sitting on a bed, facing a television set and eating Fritos, Billy and Ricky were watching television, and Charles Lamb was talking with the two brothers.

Defendant entered the apartment shortly after Charles Lamb arrived. Charles described his entry as follows, "the door opened all of a sudden and Mr. Wynn came in." Charles testified that when defendant entered the apartment he had a gun in his hand, and he was holding it down by his side. He saw defendant standing by his wife's bed, still holding the gun. He further testified, "then we was just talking . . . and we heard a big boom, and I started to turn around and the gun was up, you know, up, not on the side. And Mrs. Wynn was falling back on the bed." According to Charles, when he turned around to look at what had occurred, he saw the gun pointed at Mrs. Wynn's stomach.

Charles indicated that prior to the shooting, defendant and his wife were "talking quiet." He remembered they were talking about the car, but he did not remember what was said. He recalled having previously seen the defendant with his gun. After hearing the shot, he ran out of the apartment.

Billy Wynn testified that his father had entered the apartment carrying his gun in his right hand and his fiddle in his left. His father went to a back room, reentered the bedroom and then went to the kitchen. Billy did not see his father reenter the bedroom, prior to the shooting, but he did hear his father say, "I have been driving around and around the block," and his mother respond that defendant "could drive

around and around the block all he wanted." He did not see his mother shot, but when he heard the gunshot he "got up, kissed Mother, and ran."

Ricky Wynn testified that when his father entered the apartment on the night of the shooting, he was carrying only his gun. After defendant entered the apartment, he "cocked the gun, cocked it back, and then he uncocked it and went over to the bed and cocked it down, . . ." Ricky's testimony of an overheard conversation between his mother and father was essentially similar to that of his brother. He stated his mother said, "Just go ahead and drive around the block. Who cares." He did not see his mother shot. After hearing the sound, he looked at his mother, saw she was bleeding and ran out. Ricky testified that he did not pay any attention to the gun, or his father at that point.

The death certificate of Effie Wynn was offered into evidence to establish that her death resulted from a gunshot wound.

A .45 caliber Colt revolver, identified as belonging to the defendant was found by a police officer in a closet between the back bedroom and the bathroom of the apartment. At the time the revolver was found, there was one spent cartridge in the cylinder, and it had recently been fired. Ricky Wynn testified that the Colt was the gun his father had been carrying immediately prior to his mother's being shot.

*Exclusion of Evidence*

Charles Lamb was the first witness called by the prosecution. He testified that the defendant had a gun in his hand when he entered the apartment. On cross-examination he stated he did not know whether defendant had something—more particularly a fiddle and a bow—in his other hand. Subsequently, the following exchange ensued: "Q. Do you ever remember seeing Mr. Wynn bring his gun and his fiddle from the car before this? A. I seen him bring in the gun before. Q. And when he brought the gun in on that prior occasion, did he also have his fiddle at the same time? [District Attorney] : I am going to object, your Honor. This is completely immaterial. What may have happened on some other occasion is irrelevant at this time. [Public Defender] : Your Honor, it will show a course of conduct . . . what makes this relevant, and the offer of proof will be that the defendant customarily kept a revolver in the glove box of his car, and also kept a fiddle in his car. It was his nightly procedure before retiring for the night to take both the gun and the

fiddle up to his residence. He did this consistently on a daily basis, and that this particular occasion was not inconsistent with his prior practice. The Court: Sustained. [Public Defender] : When did you see Mr. Wynn with his gun before, . . . Charles? A. I don't know when it was. But he took it out to the firing range out by the dump when he was going to dump out some garbage, and he shot it out there. [Public Defender] : No further questions, your Honor.''

''Voluntary manslaughter is a crime requiring a specific intent. [Citation.] Such intent is almost invariably an inference to be drawn by the jury from circumstantial evidence. [Citation.] The character of a weapon and the consequences of its use are facts relevant to the trier of fact on the issue of intent. [Citation.]'' (*People* v. *Welborn* (1966) 242 Cal.App.2d 668, 673 [51 Cal.Rptr. 644], and see discussion on sufficiency of evidence, *infra.*)

 Defendant asserts error because the proffered evidence would have tended to dispel any ominous inference that might have been drawn from the mere presence of the weapon itself, and it would have tended to negate any inference that the revolver was brought into the apartment for the express purpose of shooting someone.

There is some merit to defendant's contention that his habitual possession of the revolver would have been relevant, but the record fails to show either that the witness was capable of testifying to facts concerning that habit, or that the defendant was in any way restrained from eliciting what the witness had actually observed concerning the defendant's possession of the gun.

Specifically, the question to which the objection was sustained attempted to elicit information as to whether the witness had ever observed the defendant bring in his fiddle. At that time there was nothing before the court to indicate that the defendant had brought in a fiddle on the occasion of the fatal shooting. The witness had testified that he did not know if the defendant had anything in his other hand.

The witness was not a member of the defendant's household, and no attempt was made to lay a foundation that he had observed the glove compartment in the defendant's car, or the defendant's daily procedure. The witness' statement that he had seen the defendant bring in the gun before remained in the record, and was not the subject of any motion to strike. The record affirmatively reflects that defendant, without objection, was permitted to pursue inquiry about when the

witness had previously seen the gun (without reference to the fiddle), that this inquiry was answered, and that no further questions were asked.

Whether the court merely believed inquiry concerning the fiddle was irrelevant, or whether it would have precluded the admission of any evidence of the defendant's prior possession and use of the gun, cannot be definitely determined on the record before the court.

The absence of any prejudice in the court's ruling, if it were erroneous, is established not only because defendant was given an opportunity to exhaust the knowledge of the witness then on the stand, but also because defendant's return to his wife's presence, with the gun in his hand, after depositing the fiddle, was a more damning circumstance than his original entry into the house with the fiddle and gun.

No prejudicial error is found in the ruling on the prosecution's objection.

*Sufficiency of the Evidence*

For the purposes of this case it is necessary to consider the elements of voluntary and involuntary manslaughter.[2] ██ "Voluntary manslaughter is a wilful act, characterized by the presence of an intent to kill engendered by sufficient provocation and by the absence of premeditation, deliberation and (by presumption of law) malice aforethought." (*People* v. *Bridgehouse* (1956) 47 Cal.2d 406, 413 [303 P.2d 1018]. Accord: *People* v. *Forbs* (1965) 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825]; *People* v. *Welborn, supra,* 242 Cal.App.2d 668, 673; *People* v. *Doyle* (1958) 162 Cal. App.2d 158, 160 [328 P.2d 7]; and *People* v. *Miller* (1931) 114 Cal.App. 293, 300 [299 P. 742].)

██ Defendant contends that there is no evidence of a specific intent to kill. In adjudicating this contention, this court is bound by the following rule: "The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence

[2]Penal Code, section 192 provides in pertinent part: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: 1. Voluntary—upon a sudden quarrel or heat of passion. 2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; . . ."

it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. [Citations.]'' (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778]. See also *People* v. *Welborn, supra,* 242 Cal.App.2d 668, 673; *People* v. *Yuhas* (1963) 222 Cal.App.2d 61, 66 [34 Cal.Rptr. 698]; *People* v. *Thompson* (1961) 193 Cal.App.2d 620, 621-622 [14 Cal.Rptr. 512]; *People* v. *Taylor* (1960) 187 Cal.App.2d 240, 243-244 [9 Cal.Rptr. 390]; and *People* v. *Miller, supra,* 114 Cal.App. 293, 299.)

◼ Defendant recognizes the principle set forth in the cases last cited, but insists that the evidence does not sustain the inference of specific intent upon which the judgment of the trial court must be predicated. He relies upon the following principles: ''Implicit in our duty to determine the legal sufficiency of evidence to sustain a verdict is our obligation, in a proper case, to appraise the sufficiency and effect of admitted or otherwise indubitably established facts as precluding or overcoming, as a matter of law, inconsistent inferences sought to be derived from weak and inconclusive sources.'' (*People* v. *Holt* (1944) 25 Cal.2d 59, 70 [153 P.2d 21]. Accord: *People* v. *Ford* (1966) 65 Cal.2d 41, 51 [52 Cal.Rptr. 228, 416 P.2d 132]; and *People* v. *Hall* (1964) 62 Cal.2d 104, 110 [41 Cal.Rptr. 284, 396 P.2d 700].) ''To justify a criminal conviction, the trier of fact must be rea-

sonably persuaded to a near certainty. The trier must therefore have reasonably rejected all that undermines confidence. This case presents a mass of undisputed evidence and unexplained facts that destroys confidence in any inference pointing to guilt. Each item of evidence against defendant is so weak and inconclusive that together they are insufficient to constitute proof beyond a reasonable doubt." (*People* v. *Hall, supra,* 62 Cal.2d 104, 112.) "Evidence which merely creates a strong suspicion of the guilt of the accused does not shift the burden of proof and impose upon him the duty of overcoming the suspicion." (*People* v. *Alkow* (1950) 97 Cal.App.2d 797, 802 [218 P.2d 607]. See *People* v. *Tatge* (1963) 219 Cal.App.2d 430, 435 [33 Cal.Rptr. 323]; and *People* v. *Tidmore* (1963) 218 Cal.App.2d 716, 720 [32 Cal. Rptr. 444].) In the absence of proof of specific intent to kill, a verdict of voluntary manslaughter cannot be sustained. (*People* v. *Forbs, supra,* 62 Cal.2d 847, 852.)

As noted in *People* v. *Welborn, supra,* "The character of a weapon and the consequences of its use are facts relevant to the trier of fact on the issue of intent." (242 Cal.App.2d at p. 673.) Here a revolver, which had recently been fired, which was found on the premises, and which was identified by the defendant's son, was received in evidence. The testimony showed that it was cocked and uncocked by the defendant when he entered the house. The manner in which it could be fired and the pressure necessary to actuate the mechanism were subject to the trial court's scrutiny. The facts that the defendant returned to the presence of the victim with the revolver after depositing his fiddle, that their reported conversation indicated a strained relationship, that the gun was pointed at the victim when first observed immediately after the discharge, and that the weapon was found hidden in a closet (cf. *People* v. *Taylor, supra,* 187 Cal.App.2d 240, 244) support the conclusion that the discharge of the firearm at the victim was the product of defendant's intent and volition.

In *People* v. *Thompson, supra,* the opinion states: ". . . in order to make the offense voluntary manslaughter there must be proof of a sudden quarrel or heat of passion. [Citations.]" (193 Cal.App.2d at p. 627; see also *People* v. *Finch* (1963) 213 Cal.App.2d 752, 774-775 [29 Cal.Rptr. 420]; and cf. *People* v. *Bridgehouse, supra,* 47 Cal.2d 406, 413-414; and *People* v. *Welborn, supra,* 242 Cal.App.2d 668, 673-674.) ▮▮▮ Defendant seizes on this statement, and alleges error in that the prosecution has failed to show a sudden quarrel, or

circumstances, indicating that the defendant was acting upon heat of passion.

This argument misses the mark. "When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree. [Citations.]" (*People* v. *Howard* (1930) 211 Cal. 322, 329 [295 P. 333, 71 A.L.R. 1385]; accord: *Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374]; *People* v. *Craig* (1957) 49 Cal.2d 313, 319 [316 P.2d 947]; *People* v. *Ray* (1967) 252 Cal.App.2d 932, 968 [61 Cal.Rptr. 1].) Under the foregoing circumstances where murder is charged "the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." (Pen. Code, § 1105, and see cases last cited.)

In this case, however, defendant was not tried for murder. By filing the amended indictment the prosecution in effect conceded that its proof would tend to show that the crime committed would only amount to manslaughter. Under these circumstances the provisions of section 1105 are not applicable. "As the burden . . . is not imposed upon the defendant when the charge is murder and the evidence of the prosecution tends to show only that he is guilty of manslaughter, it would seem obvious that the legislature did not intend to cast the burden upon a defendant when the original charge is manslaughter." (*People* v. *Lloyd* (1929) 97 Cal. App. 664, 668 [275 P. 1010]; and see *People* v. *Turner* (1928) 93 Cal.App. 133, 138-139 [269 P. 204].)

It does not follow, however, that the burden of proving the mitigating circumstances, which have been conceded by the prosecution, devolves upon that party. In *People* v. *Huntington* (1908) 8 Cal.App. 612 [97 P. 760], the defendant was originally charged with murder. He was convicted of manslaughter and that conviction, which also served to acquit him of all higher offenses (8 Cal.App. at p. 614), was reversed. On appeal from a second conviction of manslaughter the opinion noted, "The main contention of defendant is that the court received evidence which showed, or tended to show, that the death was caused in an attempt to perform a criminal abor-

tion upon deceased, and hence the crime proved was murder and not manslaughter, and that defendant could not be convicted of manslaughter where the evidence shows that the crime was murder in killing deceased by attempting to produce an abortion.'' (8 Cal.App. at p. 614.) The court concluded, ''If the killing was unlawful with malice aforethought, it was murder, and it was also manslaughter, because, by the very definition of the statute, it was the unlawful killing of a human being. It is none the less manslaughter because we cannot logically place it under one of the headings of section 192 as being voluntary or involuntary.'' (*Id.*, p. 616.) So in this case, although defendant was relieved of the duty of offering evidence to show mitigating circumstances by the nature of the charge, he was still faced with the rule of *People* v. *Howard, supra,* which permitted a finding of second degree murder, an offense including manslaughter, from the unexplained killing of the victim. (See *People* v. *Powell* (1949) 34 Cal.2d 196, 205-206 [208 P.2d 974]; and *People* v. *Thompson, supra,* 193 Cal.App.2d 620, 627-628.)

 In any event, there was sufficient evidence to sustain a finding that the homicide occurred ''upon a sudden quarrel or heat of passion.'' Defendant properly points out that the testimony of Charles Lamb, adduced after objection, that the quiet, and by him but fragmentally heard, conversation between defendant and his wife immediately prior to the shooting ''sounded like an argument,'' cannot be used to support a finding of that fact. (*Hoult* v. *Baldwin* (1889) 78 Cal. 410, 414 [20 P. 864]; *Stevens* v. *Mostachetti* (1946) 73 Cal.App.2d 910, 912 [167 P.2d 809]; *Willmon* v. *Peck* (1907) 5 Cal.App. 665, 667 [91 P. 164].) The trial court, however, was entitled to draw the inference that there was a quarrel from the sons' testimony which revealed the victim's curt reply to the defendant.

Defendant's further objection that there is no evidence to show that the shooting was volitional, as distinguished from accidental, is answered by what has been reviewed above. Since the evidence was sufficient to support the finding of a specific intent to kill, it matters not that from the same evidence the court might have found either involuntary manslaughter (see Pen. Code, § 192, subd. 2, and discussion, *infra,* regarding reversal or modification of the judgment), or that the homicide was committed by accident or misfortune (Pen. Code, § 195).

*Reversal or Modification of Judgment*

■ The evidence being sufficient, defendant is not entitled to a reversal of the judgment. He insists, however, that he is entitled to a modification of the judgment to show a conviction of involuntary rather than voluntary manslaughter.[3]

Preliminarily, the prosecution asserts that consideration of this question is precluded by a line of authorities which indicate that since the punishment (Pen. Code, § 193) for manslaughter, which is not committed in the driving of a vehicle, is the same whether the manslaughter is voluntary or involuntary, it is unnecessary to determine in which category the offense falls when the evidence would support either type. (*People* v. *Jackson* (1962) 202 Cal.App.2d 179, 182 [20 Cal. Rptr. 592] ; *People* v. *Freudenberg* (1953) 121 Cal.App.2d 564, 594 [263 P.2d 875] ; *People* v. *Bones* (1917) 35 Cal.App. 429, 433-434 [170 P. 166] ; *People* v. *Huntington, supra,* 8 Cal.App. 612, 616.)

The matter is not so readily resolved. In *People* v. *Forbs, supra,* the question was noted, but because the case was reversed on other grounds, the court did not "probe the issue of whether the erroneous verdict of voluntary manslaughter would be of such prejudice to defendant as to require reversal" when there was evidence of involuntary manslaughter. (62 Cal.2d at pp. 852-853.) In *People* v. *Bross* (1966) 240 Cal.App.2d 157 [49 Cal.Rptr. 402], the court held that it was error to fail to instruct on the elements of involuntary manslaughter where the evidence permitted a finding of either voluntary or involuntary manslaughter. The court observed, "And while we are discussing the subject of degrees of manslaughter, can it be said in this case that it is not material whether the case falls under one head or the other? Is it not reasonable to assume that the Adult Authority, in determining the punishment, would fix the term of imprisonment for a shorter term when the crime was involuntary manslaughter than it would if the conviction were for voluntary man-

---

[3] "The involuntary manslaughter might be 'in the commission of an unlawful act, not amounting to felony' (Pen. Code, § 192, subd. 2), for it could be found that defendant unlawfully exhibited the gun in an angry manner, a misdemeanor (Pen. Code, § 417), or it might be 'in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection' (Pen. Code, § 192, subd. 2), for it could be found that defendant was simply holding the gun but that he was negligent in so doing. [Citations.]" (*People* v. *Southack* (1952) 39 Cal.2d 578, 584 [248 P.2d 12]; and see *People* v. *Freudenberg* (1953) 121 Cal.App.2d 564, 577-578, 580-581 and 583 [263 P.2d 875].)

slaughter?" (240 Cal.App.2d at p. 171.) Furthermore, the question of whether the defendant used a loaded weapon with the intent to kill (voluntary manslaughter), or did not use a deadly weapon, but merely held it without due caution (involuntary manslaughter), may affect the defendant's right to probation. (Pen. Code, § 1203; *People* v. *Southack* (1952) 39 Cal.2d 578, 591 [248 P.2d 12] ; *People* v. *Doyle, supra,* 162 Cal.App.2d 158, 162-163; and see *People* v. *Furber* (1965) 233 Cal.App.2d 678 [43 Cal.Rptr. 771] ; *People* v. *Shipman* (1952) 110 Cal.App.2d 279, 280 [242 P.2d 349] ; and cf. *People* v. *Alotis* (1964) 60 Cal.2d 698, 705-707 [36 Cal.Rptr. 443, 388 P.2d 675].)

It is concluded from the latter cases that defendant is entitled to raise the question of the type of manslaughter of which he could properly be convicted. This court, however, cannot reduce the degree of a crime where the evidence is sufficient to sustain the offense of which the defendant was convicted in the trial court. (*People* v. *Daugherty* (1953) 40 Cal.2d 876, 886 [256 P.2d 911]; *People* v. *Odle* (1951) 37 Cal.2d 52, 55-59 [230 P.2d 345] ; *People* v. *Becerra* (1963) 223 Cal.App.2d 448, 449-450 [35 Cal.Rptr. 808] ; *People* v. *Berner* (1938) 28 Cal.App.2d 392, 395 [82 P.2d 617] [overruled on other grounds *People* v. *O'Neil,* 62 Cal.2d 748, 751 [44 Cal. Rptr. 320, 410 P.2d 928]]. See Pen. Code, §§ 1181, subd. 6 and 1260; and cf. *People* v. *Ford, supra,* 65 Cal.2d 41, 51.) As outlined above, the evidence does support the court's finding that the defendant was guilty of unlawfully killing his wife upon a sudden quarrel as charged in the amended indictment, and that he was armed with a deadly weapon while in the commission of the offense.

Respondent suggests the record fails to show that the denial of probation was predicated upon the fact that he was ineligible under the provisions of section 1203 of the Penal Code, and that probation was therefore denied for general considerations. (See *People* v. *Shipman, supra,* 110 Cal.App.2d 279, 280.) The court's remarks, however, indicated that it considered the defendant ineligible for probation because of his use of a deadly weapon.[4] Nevertheless, since these conclusions are sustained by the evidence, defendant is entitled to no relief.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

---

[4] The court stated: "Mr. Wynn, technically, probation is not available to you in this case unless the Court makes some rather extreme findings.